# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANTHONY J. HAMPTON, | |
| Hampton, | |
| v. | Case No. 18-CV-04071-DDC-ADM |
| BARCLAYS BANK DELAWARE; DISCOVER BANK; LOAN DEPOT, LLC; MARKETPLACE LOAN GRANTOR TRUST, SERIES 2016-LD1; EQUIFAX, INC.; EQUIFAX INFORMATION SERVICES, LLC.; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANSUNION, LLC; AND DOES 1-10, | District Judge Daniel D. Crabtree Magistrate Angel D. Mitchell |
| Defendants. | |

## BARCLAYS BANK DELAWARE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF UNCONTROVERTED FACTS ......................................... 1

    A.   Barclays' Consumer Loan Product ..................................................... 1

    B.   Hampton Applies and is Approved for a Barclays Personal Loan ................... 2

    C.   Hampton Used the Loan Funds to Make Purchases and Made Monthly Payments to Barclays. ........................................................................ 4

    D.   Hampton Defaults on his Loan Obligations to Barclays ................................ 6

    E.   Hampton's Disputes ........................................................................... 7

    F.   Hampton Files Suit Against Barclays .............................................. 30

    G.   The Current Status of the Loan and Information about Barclays. .............. 31

LEGAL STANDARD ....................................................................................... 1

ARGUMENT .................................................................................................... 2

I.   Barclays is Entitled to Summary Judgment on Hampton's FCRA Claim. .......... 3

   A.   Barclays Responded to Disputes Received from CRAs with Accurate Account Information. ........................................................................ 4

       1.   Hampton's Claims that He is Not Legally Responsible for The Loan are Unfounded. ...................................................................... 6

          i.   Barclays is Not Subject to the FDCPA and Was Not Required to Validate Hampton's Loan .............................................. 6

          ii.   Barclays Originated and is the Current Creditor of Hampton's Loan. ........................................................................ 8

   B.   Barclays Conducted a Reasonable Investigation into Each of the Disputes Received from CRAs Relating to Hampton's Account. ............... 9

   C.   Hampton is Not Entitled to Punitive Damages. .......................................... 12

II.   Barclays is Entitled to Summary Judgment on its Counterclaims Against Hampton. .......................................................................................... 14

   A.   Barclays is Entitled to Summary Judgment on its Breach of Contract Claim. ............................................................................................. 14

       1.   A Valid Contract Exists between Hampton and Barclays. ................... 15

       2.   Consideration Exists Because Barclays Caused $5,000 to be Deposited into Hampton's Bank Account in Exchange for Hampton's Promise to Repay Barclays the Loan Funds Plus Interest. ...................................... 16

3.    Barclays Performed its Contractual Obligations. ................................. 16

4.    Hampton is In Breach of the Loan Contract. ........................................ 17

5.    Barclays Continues to Suffer Damages as a Result of Hampton's Breach. ...................................................................................................... 17

B.    In the Alternative, Barclays is Entitled to Summary Judgment on its Unjust Enrichment Claim. .............................................................................. 18

**CONCLUSION** ...................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144, 157 (1970) ........................................................................ 2

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................... 1

*Alston v. United Collections Bureau, Inc.*,
   No. DKC 13-0913, 2014 WL 859013 (D. Md. Mar. 4, 2014) ................................. 10

*Birmingham v. Experian Info. Solutions, Inc.*,
   633 F.3d 1006 (10th Cir. 2011) ..................................................................... 12, 13

*Chiang v. Verizon New England Inc.*,
   595 F.3d 26, 30 (1st Cir. 2010) ................................................................. 4, 10

*Commercial Credit Corp. v. Harris*,
   510 P.2d 1322, 1325 (Kan. 1973) .............................................................. 15

*Estate of Draper v. Bank of America, N.A.*,
   288 Kan. 510 (2009).......................................................................... 18

*Estate of Hetrick v. Cessna Aircraft Co.*,
   No. 99,987, 2009 WL 1692025 (Kan. Ct. App. 2009)........................................... 19

*Fifth Third Bank v. Canyon Crest Ins. Servs., Inc.*,
   No. 09-2440-CM, 2013 WL 12250855 (D. Kan. Jan. 4, 2013) ................................. 8

*Gissler v. Pa. Higher Educ. Assistance Agency*,
   No. 16-CV-01673-PAB-MJW, 2017 WL 4297344 (D. Colo. Sept. 28,
   2017)........................................................................................ 9, 10

*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*,
   259 Kan. 166 (1996).......................................................................... 18

*Henson v. Santander Consumer USA Inc.*,
   137 S. Ct. 1718 (2017) ....................................................................... 7

*Hunt v. JPMorgan Chase Bank, Nat'l Ass'n,*
    770 F. App'x 452 (11th Cir. 2019) ........................................................................ 13

*Kannady v. City of Kiowa,*
    590 F.3d 1161, 1169 (10th Cir. 2010) ................................................................... 1

*Ladouceur v. Wells Fargo,*
    682 F. App'x 649 (10th Cir. 2017) .......................................................................... 7

*Lindsey Masonry Co. v. Murray & Sons Constr. Co.,*
    53 Kan. App. 2d 505 (2017)................................................................................... 16

*Llewellyn v. Allstate Home Loans, Inc.,*
    711 F.3d 1173 (10th Cir. 2013) ....................................................................... 9, 13

*Maiteki v. Marten Transp. Ltd.,*
    828 F.3d 1272 (10th Cir. 2016) ....................................................................... 2, 10

*Maiteki v. Marten Transp. Ltd,*
    No. 12-CV-2021-WJM-CBS, 2015 WL 5996760 (D. Colo. Oct. 15,
    2015), *aff'd,* 828 F.3d 1272 (10th Cir. 2016)....................................................... 10

*Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ................................................................................................. 1

*Mid-Am Bldg. Supply, Inc. v. Schmidt Builders Supply, Inc.,*
    No. 11-4167-KGS, 2013 WL 1308980 (D. Kan. Mar. 29, 2013) ........................... 15

*Nagim v. Equifax Info. Servs., LLC,*
    446 F. App'x 105 (10th Cir. Nov. 3, 2011) ............................................................. 5

*Nahno-Lopez v. Houser,*
    625 F.3d 1279 (10th Cir. 2010) .............................................................................. 1

*Perry v. Stewart Title Co.,*
    756 F.2d 1197, 1208 (5th Cir. 1985) ...................................................................... 7

*Phillips & Easton Supply Co. v. Eleanor Int'l, Inc.,*
    212 Kan. 730 (1973)............................................................................................... 15

*Pinson v. Equifax Credit Info. Servs., Inc.,*
    316 F. App'x 744 (10th Cir. 2009) .......................................................................... 2

*Safeco Ins. Co. v. Burr*,
    551 U.S. 47 (2007) ................................................................................. 13

*Seamans v. Temple Univ.*,
    744 F.3d 853, 864 (3d. Cir. 2014) ......................................................... 2

*Stewart v. Equifax Info. Servs., LLC*,
    320 F. Supp. 3d 1186 (D. Kan. 2018) ..........................................*passim*

*Thomas v. Wichita Coca-Cola Bottling Co.*,
    968 F.2d 1022 (10th Cir. 1992) .............................................................. 1

*Tilley v. Global Payments, Inc.*,
    603 F. Supp. 2d 1314 (D. Kan. 2009) .................................................... 2

*White v. Four B Corp.*,
    No. 11-2416-JWL, 2011 WL 4688843 (D. Kan. Oct. 5, 2011) ............ 15

*Willis v. Capital One Corp.*,
    611 F. App'x 500, 502 (10th Cir. 2015) ................................................ 9

**Statutes**

15 U.S.C. 1681a(f) ......................................................................................... 7

15 U.S.C. § 1681g .......................................................................................... 7

15 U.S.C. 1681n ........................................................................................... 12

15 U.S.C. § 1681s-2(b) ......................................................................... 4, 7, 13

15 U.S.C. § 1692 ........................................................................................ 7, 6

Kan. Stat. Ann. § 84-3-302 ........................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 56(a) ...................................................................................... 1

Pattern Instructions for Kansas, Civ. 4th 124.01–A ........................... 15, 16

U.C.C. § 3-302 ............................................................................................... 8

## INTRODUCTION

It is undisputed that Plaintiff Anthony Hampton ("Hampton") obtained and later defaulted on his repayment obligations on a $5,000 personal loan (the "Loan") from Barclays Bank Delaware ("Barclays").  Hampton defaulted only a few months into his Loan payment obligations.   His sole claim against Barclays under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") arises out of Hampton's frivolous disputes to consumer reporting agencies ("CRAs") about Barclays' reporting of the Loan.   Hampton began disputing the Loan almost immediately after he defaulted on his monthly payment obligations.  He submitted eight disputes in under two months that included over 650 pages of "supporting" documents.  None of his disputes had any merit and Barclays conducted a reasonable investigation of each.

There is no genuine dispute as to any material fact.  Barclays accurately reported to the CRAs Hampton's failure to timely repay the Loan and it is entitled to summary judgment both on Hampton's frivolous FCRA claim and on Barclays' counterclaim to recover the unpaid balance on the Loan.

### STATEMENT OF UNCONTROVERTED FACTS

#### A.    Barclays' Consumer Loan Product

1.    Barclays offers an invitation-only personal consumer loan product (the "Barclays Personal Loan").  (Exhibit A, Declaration of Claudia Roark (the "Roark Decl." at ¶ 4).

2.    The Barclays Personal Loan is an unsecured installment loan product that offers consumers a loan amount ranging from $5,000 to $35,000, with an Annual

Percentage Rate (APR) ranging from 6.99% to 18.99% and with loan repayment terms ranging from 36 months to 60 months.  (*Id.*)

**B.    Hampton Applies and is Approved for a Barclays Personal Loan**

3.    Hampton applied for a Barclays Personal Loan online.  (Roark Decl. ¶ 5; Pl.'s Supp. Resp. to Barclays 1st set of Interrogatories Excerpts ("Hampton Supp. ROG Resp.") attached hereto as <u>Exhibit B</u> at No. 5; Pl.'s Supp. Resp. to Barclays 1st Set of Requests for Admissions Excerpts ("Hampton Supp. RFA Resp.") attached hereto as <u>Exhibit C</u> at Nos. 1-2; Hampton Deposition Transcript Excerpts ("Hampton Tr.") attached hereto as <u>Exhibit D</u>) at 21:23-22:2.)

4.    As part of the online application process, Hampton provided Barclays with his personal information and submitted photographs of his paystubs to verify his income. (Roark Decl. ¶ 5; Hampton Tr. at 20:5-21:8, 22:9-13.)

5.    Hampton also provided Barclays with information about his bank account in which the Loan proceeds were to be deposited. (Hampton Supp. RFA Resp. Nos. 6, 9; Hampton Tr. 22:18-25; Roark Decl.  ¶ 10.)

6.    On October 18, 2017, Hampton e-signed the online application and was approved for a five thousand dollar ($5,000) loan with a five year (60 month) term, and a 9.99% interest rate.  (Roark Decl. ¶¶ 6-7; Hampton Supp. RFA Resp. No. 7; Hampton Tr. 21:9-22:1.)

7.    Barclays is the originator of Hampton's Loan. (Roark Decl. ¶ 11.)

8.    As part of the online application process, Hampton agreed to certain

terms and conditions, including Barclays' "ESIGN CONSENT" by which he agreed that that any of the communications Barclays provided to him or that Hampton signed "may be in electronic form" and that Barclays was entitled to obtain electronic signatures from Hampton.  (Roark Decl. ¶ 7-8; Hampton Tr. 27:7-28:14.)

9.     Under the terms of Hampton's Loan, he was required to make 60 monthly payments of one-hundred six dollars and forty-seven cents ($106.47) beginning November 24, 2017.  (Roark Decl. ¶ 7-8; Hampton Tr. 27:7-28:14.)

10.     Hampton agreed to the terms and conditions associated with the Loan, including repayment of the $5,000 principal amount on the loan, plus interest:

> Q. Okay. Well, would you agree with me that this document [Barclays 000004-06] is the terms of the loan that you applied for with Barclays?
> A. Yes.
>
> Q. Okay.  And would you agree that these terms and conditions apply to the $5,000 loan that was deposited into your Envista Credit Union account?
> A. Yes.
>
> Q. Okay.  And if we could look on page 4 – Barclays 4.  Do you see at the top where it says, Acceptance of loan terms?
> A. Yes.
>
> Q. Could you read that paragraph out loud for the record?
> A. (Reading) You accept and agree to all the terms of this installment loan and this loan agreement when you sign this agreement electronically, or use or receive the benefit of the loan proceeds.
>
> Q. And on that same page where it says, Promise to pay, can you read that sentence as well?
> A. (Reading) In return for the loan that you receive, you promise to pay the principal amount advanced plus

interest on that amount.

Q. Okay.  And further down there's a heading called, Payments.  Could you read that to me as well?
A. (Reading) You agree to make 60 monthly payments of $106.47.  Payments are due each month on the 24th, beginning on November 24th, 2017.  We apply payments to the – first to accumulated interest and then to unpaid principal, and then to any other charges that are due.  You agree to pay all amounts then outstanding with your final payment.  You will make your payments at MyBarkleycardloan.com [sic] or at a different location if required by us.  We may accept late payments, partial payments or items marked "paid in full" or the like without losing any rights under this loan agreement.

Q. Okay.  Thank you.  And so would you agree you agreed to these terms and conditions when you opened your account with Barclays?
A. Yes.

(Hampton Tr. 26:24-28:14; Roark Decl. ¶ 7-9.)

11.    The Loan agreement provides that Barclays may recover "reasonable attorneys' fees, court or other collection costs" in connection with the use of an attorney to collect on the Loan if Hampton is in default.  (Roark Decl. ¶ 7.)

## C.    Hampton Used the Loan Funds to Make Purchases and Made Monthly Payments to Barclays.

12.    On October 18, 2017, Barclays caused the $5,000 amount of the Loan to be deposited into Hampton's checking account with Kansas Super Chief Credit Union (now Envista Credit Union) ending in 8508, as requested by Hampton.  (Hampton Supp. RFA Resp. No. 6; Hampton Tr. 24:1-25-4, 53:1-3; Envista Document Production in Response to Subpoena Excerpts ("Envista"), attached hereto as Exhibit E at 00008-

000010; Hampton Supp. RFA Resp. No. 6; Roark Decl. ¶ 10.)

13.     After receiving the $5,000, Hampton began spending the loan proceeds on various products and services including paying deposits for online daily fantasy football sites where he entered contests and tried to win money.  (Hampton Supp. ROG Resp. No 6; Hampton Supp. RFA Resp. No. 9; Hampton Tr. 33:1-34:15; Envista 00008-10.)

14.     No one else was authorized to use Hampton's bank account ending in 8508. (Hampton Tr. 24:5-19.)

15.     Hampton made his first payment on the Loan which Barclays received and applied on or around November 24, 2017 in the amount of $110.00.  (Hampton Supp. RFA Resp. No. 10; Hampton Tr. 28:15-29:15; Envista 000008-10, 000025-28; Roark Decl.¶ 12.)

16.     Hampton made a second payment on the Loan which Barclays received and applied on or around December 24, 2017 in the amount of $110.00. (Hampton Supp. RFA Resp. No. 11; Hampton Tr. 30:12-24; Envista 000008-10, 000029-32; Roark Decl.¶ 13.)

17.     Hampton made a third payment on the Loan which Barclays received and applied on or around January 24, 2018 in the amount of $110.00. (Hampton Supp. RFA Resp. No. 12; Hampton Tr. 29:16-30:8; Envista 000008-10, 000033-36; Roark Decl.¶ 14.)

18.     The $110.00 payment which Hampton made on January 24, 2018 was

the last regularly scheduled monthly payment that was applied to Hampton's Loan.  (Roark Decl.¶ 18.)

### D. Hampton Defaults on his Loan Obligations to Barclays

19.    Under the terms and conditions of Hampton's Loan, he agreed that he would "be in default" if in any month, Barclays did not receive his scheduled payment when due; or, *inter alia*, if Hampton "fail[ed] to comply with th[e] Loan Agreement." (Roark Decl. ¶¶ 7, 19; Hampton Tr. 26:9-27:6.)

20.    Hampton attempted to make another payment on the Loan on or around February 24, 2018 in the amount of $110.00, but that payment was returned on or around March 2, 2018 because Hampton's bank account contained insufficient funds to process the payment. (Hampton Supp. RFA Resp. No. 13; Envista 00008-10, 000041-44; Hampton Tr. 31:5-22; Roark Decl. ¶ 15.)

21.    Hampton attempted to make another payment on the Loan on or around March 24, 2018 in the amount of $110.00, but that payment was cancelled on or around March 27, 2018 and returned on or around March 28, 2018 because Hampton's bank account contained insufficient funds and he had closed the bank account setup to make payments in the Loan.  (Hampton Supp. RFA Resp. No. 14; Envista 00008-10; Hampton Tr. 31:22-32:13; Roark Decl. ¶ 16.)

22.    After March 24, 2018, Hampton made no further attempts to make a payment, and Barclays received no other payments to apply to the Loan. (Hampton Supp. RFA Resp. Nos. 15, 16; Hampton Tr. 32:16-25; Roark Decl. ¶¶ 17-18.)

23.   Under the terms of the Loan agreement, Hampton's failure to make timely payments constituted an event of Default. (Roark Decl. ¶¶ 7, 19.)

### E.   Hampton's Disputes

24.   Beginning in April 2018—two months after Hampton stopped making payments on the Loan, Barclays began receiving automated consumer dispute verifications ("ACDV") from CRAs indicating that Hampton disputed certain information on his credit report about the status of the Loan. (Roark Decl. ¶ 22.)

25.   Barclays received a total of eight (8) ACDVs relating to Hampton's account that included over 650 pages of documents.  (*Id*. at ¶ 23.)

a.  The first was received from Trans Union on April 4, 2018 (the "April 4, 2018, Trans Union ACDV"). (*Id*.)

b.  The second was received Experian on April 6, 2018 (the "April 6, 2018, Experian ACDV"). (*Id*.)

c.  The third was received from Equifax on April 6, 2018 (the "April 6, 2018, Equifax ACDV"). (*Id*.)

d.  The fourth was received from Trans Union on May 8, 2018 (the "May 8, 2018, Trans Union ACDV"). (*Id*.)

e.   The fifth was received from Trans Union on May 13, 2018 (the "May 13, 2018 Trans Union ACDV").  (*Id*.)

f.  The sixth was received from Experian on May 16, 2018 (the "May 16, 2018 Experian ACDV"). (*Id*.)

- 7 -

g.  The seventh was received from Equifax on May 16, 2018 (the "May 16, 2018 Equifax ACDV"). (*Id.*)

h.  The eighth was received from Equifax on May 17, 2018 (the "May 17, 2018 Equifax ACDV"). (*Id.*)

### *The April 4, 2018, Trans Union ACDV*

26.  On April 4, 2018, Barclays received an ACDV from Trans Union. (Roark Decl ¶ 24.)

27.  The April 4, 2018, Trans Union ACDV, listed "Dispute Code 1: 106: Disputes present/previous Account Status/Payment Rating/Account History. Verify Account Status, Payment Rating and Account History."  (*Id.* at ¶ 25.)

28.  Included with the April 4, 2018, Trans Union ACDV were 174 pages of images of the following (*Id.* at ¶ 26):

a.  A letter dated March 20, 2018 addressed to the CEO of Trans Union (the "Barclays CRA Letter").  In the letter Hampton alleges that the Loan "is NOT delinquent, because in order for it to be delinquent, there would first have had to be a legal and legitimate loan." The letter alleges that a CRA must remove a derogatory debt if the information cannot be verified. The letter continues that a debt "cannot be deemed 'accurate' if it cannot be 'verified'.  If it cannot be verified, then it is required to be removed according to the FCRA."  The letter also contains Hampton's account number with Barclays, and is signed by

Hampton. (*Id.*)

b.    A letter dated March 21, 2018 addressed to James E. Staley / CEO of

Barclays Bank Delaware (the "Staley Letter"). In the letter, Hampton

requests verification of the debt pursuant to the Fair Debt Collection

Practices Act, 15 USC 1692 et seq. (*Id.*)  The letter provides:

> This Notice is to confirm that your claim is disputed under
> 15 USC §1692 *et seq.* [the Fair Debt Collection Practices
> Act] Please verify under oath that this claim is valid, free
> from any claims and defenses including but not limited to:
> any breach of agreement, failure of consideration or
> material alterations, and that the original lender provided
> value. Further, that the alleged account was transferred in
> good faith and by the consent of all parties involved.
>
> After reasonable inquiry I have concluded that BARCLAYS
> BANK DELAWARE (hereinafter "BARCLAYS") is in
> breach of the alleged agreement. The following facts
> support my position in this matter:
>
> BARCLAYS failed to disclose to the alleged consumer
> Anthony J. Hampton (hereinafter "consumer") that
> BARCLAYS used consumer's note, capital, funds, money or
> money equivalent to fund a note, check or similar
> instrument that was used to fund the charges on the
> alleged account, whereby BARCLAYS did not perform
> under the agreement and risked nothing of value. Full
> disclosures are required to validity any contract.
>
> BARCLAYS has not used any of their own capital, funds,
> money or money equivalents to pay for any charges on the
> alleged account. I was very surprised to learn this fact.
> BARCLAYS received "something-for-nothing" by using the
> consumer's note(s) to fund charges to the loan account
> while retaining payments from consumer.
>
> When accounts are 90 days or more overdue, BARCLAYS
> receives a payoff of the amount due from insurance, whose

premiums were unknowingly funded by the so-called "borrower".

(*Id*.)

The Staley Letter further demanded that Barclays provide "Absolute assurance" to Hampton that Barclays did not breach his Personal Loan Agreement. Hampton also demanded that the letter's recipient sign a purportedly enclosed affidavit, and provide him with additional information to "verify" the debt, or delete and remove the debt from his "credit file" report.  No affidavit was enclosed.  The letter also contains Hampton's Loan account number with Barclays, and is signed by Hampton. (*Id*.)

c.   A copy of the same exact letter as the letter dated March 21, 2018, but addressed to Tushar Morzaria / CFO, Barclays Bank Delaware (the "Morzaria Letter").  This letter included the "VERIFICATION OF DEBT" affidavit that appeared to be missing from the Staley Letter (together with the Morzaria Letter, the "First Barclays Dispute Letter")  (*Id*.)

d.   A letter from Hampton dated March 20, 2018 addressed to the CEO of Trans Union listing an alleged Loan Depot account number that was identical in all other respects to the Barclays CRA Letter. (*Id*.)

e.   A letter from Hampton dated March 20, 2018 addressed to the Founder, Chairman and CEO of Loan Depot that is substantively

- 10 -

identical to the Staley Letter.  (*Id.*)

f.      A letter from Hampton dated March 20, 2018 addressed to the
Executive VP and CFO of Loan Depot that is substantively identical
to the Mozaria Letter.  (*Id.*)

g.      A letter from Hampton dated March 20, 2018 addressed to the CEO of
Trans Union listing an alleged Sofi Lending Corp. account number
that was identical in all other respects to the Barclays CRA Letter.
(*Id.*)

h.      A letter from Hampton dated March 20, 2018 addressed to the CEO of
Sofi Inc. that was identical in all respects to the Staley Letter. (*Id.*)

i.      A letter from Hampton dated March 20, 2018 addressed to the General
Counsel of Sofi Inc. that was identical in all other respects to the
Mozaria Letter. (*Id.*)

j.      A letter from Hampton dated March 20, 2018 addressed to the CEO of
Trans Union listing an alleged Discover account number that was
identical in all other respects to the Barclays CRA Letter. (*Id.*)

k.      A letter from Hampton dated March 19, 2018 addressed to the CEO of
Discover Financial Services that was identical in all other respects to
the Staley Letter. (*Id.*)

l.      A letter from Hampton dated March 19, 2018 addressed to the CFO of
Discover Financial Services that was identical in all other respects to

the Mozaria Letter. (*Id*.)

m.   A letter from Hampton dated March 20, 2018 addressed to the CEO of Trans Union listing an alleged Prosper Marketplace account number that was identical in all respects to the Barclays CRA Letter. (*Id*.)

n.   A letter from Hampton dated March 21, 2018 addressed to "David Kimball" of Prosper Marketplace that was identical in all other respects to the Staley Letter. (*Id*.)

o.   A letter from Hampton dated March 21, 2018 addressed to the General Counsel of Prosper Marketplace that was identical in all other respects to the Mozaria Letter. (*Id*.)

p.   A letter from Hampton dated March 20, 2018 addressed to the CEO of Trans Union regarding Marketplace Loan Grantor Trust listing an alleged Loan Depot account number that was identical in all other respects to the Barclays CRA Letter. (*Id*.)

q.   A letter from Hampton dated March 21, 2018 addressed to Marketplace Loan Grantor Trust listing an alleged Loan Depot account number purporting to be a notice of a disputed debt under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (*Id*.)

r.   A letter from Hampton dated March 21, 2018 addressed to Marketplace Loan Grantor Trust listing an alleged Loan Depot account number purporting to be a notice of a disputed debt under the

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*  This letter

was also included a "VERIFICATION OF DEBT" affidavit. (*Id.*)

29.    In the course of investigating the April 4, 2018, Trans Union ACDV and

associated 174 pages of documents, Barclays personnel reviewed its business records

relating to the Loan, Hampton's dispute, and the included documents requesting

verification of his debt.  Barclays also confirmed Hampton's demographic information

and confirmed that Hampton made a payment on or around February 24, 2018 that

was returned due to insufficient funds, that he made a payment on or around

March 24, 2018 that was returned due to insufficient funds, and that no further

payments had been made. (*Id.* ¶ 27; *see supra* ¶¶ 20-22).

30.    Barclays responded to the April 4, 2018, Trans Union ACDV on

April 11, 2018, with "Response Code: 22: Updated disputed account information.

Additional account information was also updated." (Roark Decl. ¶ 28).  In particular,

Barclays updated the following:

    a.    Hampton's First Name[1] and middle name from "Toni A" to

             "Anthony J." (*Id.*)

    b.    The Account Status was updated from Code 11 (Good Standing)

             to 71 (Account 30 days past due date) (*Id.*)

    c.    The Balance was updated from $4771 to $4902 and the Amount

---

[1] Prior to Hampton opening his account with Barclays, he legally changed his name from "Toni A. Hampton" to "Anthony J. Hampton". (Hampton Tr. 7:21-8-6; Envista 000013-18.)

Past Due was updated to $106. (*Id.*)

d.   The "Date of Account Information" was updated from March 25, 2018 to April 11, 2018, the "Date of Last Payment" was updated from March 25, 2018 to March 28, 2018. (*Id.*)

e.   The "FCRA DOFD [Date of First Delinquency]" was updated to March 24, 2018 and the "Compliance Condition Code" was updated to "XC" to reflect that the FCRA investigation was completed and that the consumer disagrees. (*Id.*)

f.   The Account History was also updated to reflect that there was a one month delinquency as of March 2018. (*Id.*)

### *The April 6, 2018, Experian ACDV*

31.   On April 6, 2018, Barclays received an ACDV from Experian. (Roark Decl. ¶ 29).

32.   The April 6, 2018, Experian ACDV listed "Dispute Code 1: 112: Consumer states inaccurate information Provide or confirm complete ID and verify all Account Information." (*Id.* at ¶ 30.)

33.   Included with the April 6, 2018, Experian ACDV were 131 pages of images of the following (*Id.* ¶ 31):

a.   Two letters dated March 20, 2018 addressed to the Chairman of Experian that were substantially identical to the Barclays CRA Letter attached to the April 4, 2018, Trans Union ACDV. The letters contained

- 14 -

Hampton's account number with Barclays, and one was signed by
Hampton, (BARCLAYS_000197-198). (*Id.*)

b.   A letter dated March 21, 2018 addressed to James E. Staley / CEO of
Barclays Bank Delaware that was identical to the Staley Letter
attached to the April 4, 2018, Trans Union ACDV.  The letter contained
Hampton's account number with Barclays, and was signed by Hampton.
(*Id.*)

c.   A letter dated March 21, 2018 addressed to Tushar Morzaria of Barclays
Bank Delaware that was identical to the Morzaria Letter attached to
the April 4, 2018, Trans Union ACDV.  The letter contained Hampton's
account number with Barclays, and was signed by Hampton. (*Id.*)

d.   In addition to the letters addressed to and involving Barclays, the
April 6, 2018, Experian ACDV also included letters largely similar to
those directed to the other co-defendants and attached to the
April 4, 2018, Trans Union ACDV.  (*Id.*)

34.   In the course of investigating the April 6, 2018, Experian ACDV,
Barclays personnel reviewed its business records relating to the Loan, Hampton's
dispute and the related 131 pages of documents.   Barclays confirmed Hampton's date
of birth, phone number, and address in separate databases, and confirmed that his
account was past due. (*Id.* at ¶ 32.)

- 15 -

35.     Barclays responded to the dispute on April 11, 2018 with "Response Code 22: Updated disputed account information Additional account information was also updated." (*Id*. at ¶ 33.)  In particular, Barclays updated the following:

a.  Hampton's DOB was updated to July 10, ███ and Telephone Number was updated to (785) 383-9793. (*Id*.)

b.  The Account Status was updated from Code 11 (Good Standing) to 71 (Account 30 days past due date). (*Id*.)

c.  The balance on Hampton's Loan from $4771 to $4902, and the Amount Past Due was updated to $106, the "Actual Payment" was updated from $110 to $0.  (BARCLAYS_000194.)  (*Id*.)

d.  The "Date of Account Information" was updated from March 25, 2018 to April 11, 2018, the "Date of Last Payment" was updated from March 25, 2018 to March 28, 2018.  (*Id*.)

e.  The "FCRA DOFD" was updated to March 24, 2018, and the "Compliance Condition Code" was updated to "XC" to reflect that the FCRA investigation was completed and that the consumer disagrees. (*Id*.)

f.  The Account History was also updated to reflect that there was a one month delinquency as of March 2018.  (*Id*.)

### *The April 6, 2018, Equifax ACDV*

36.     On April 6, 2018, Barclays received an ACDV from Equifax.  (Roark Decl. ¶ 34.)

37.     The April 6, 2018, Equifax ACDV, listed "Dispute Code 1: 112: Consumer states inaccurate information Provide or confirm complete ID and verify all Account Information." (*Id*. ¶ 35.)

38.     Included with the April 6, 2018, Equifax ACDV were 92 pages of images, of the following (*Id*. ¶ 36):

>    a.   A letter dated March 20, 2018 addressed to the Chairman and CEO of Equifax that was substantially identical to the Barclays CRA Letter attached to the April 4, 2018, Trans Union ACDV.  The letter contained Hampton's account number with Barclays. (*Id*.)

>    b.   A letter dated March 21, 2018 addressed to James E. Staley / CEO of Barclays Bank Delaware that was identical to the Staley Letter attached to the April 4, 2018, Trans Union ACDV.  The letter contained Hampton's account number with Barclays, and was signed by Hampton. (*Id*.)

>    c.   A letter dated March 21, 2018 addressed to Tushar Morzaria of Barclays Bank Delaware that was identical to the Morzaria Letter attached to the April 4, 2018, Trans Union ACDV.  The letter contained Hampton's account number with Barclays, and was signed by Hampton. (*Id*.)

- 17 -

d.  In addition to the letters addressed to and involving Barclays, the April 6, 2018, Experian ACDV also included letters largely similar to those directed to the other co-defendants and attached to the April 4, 2018, Trans Union ACDV.  (*Id.*)

39.   In the course of investigating the April 16 Equifax ACDV, Barclays personnel reviewed its business records relating to Hampton's account Hampton's dispute, and the related 92 pages of documents.  Barclays verified Hampton's date of birth, phone number, and address in separate databases, and confirmed that his account was past due. (*Id.* ¶ 37.)

40.   Barclays responded to the dispute on April 16, 2018 with "Response Code 22: Updated disputed account information Additional account information was also updated." (*Id.* ¶ 38.) In particular, Barclays updated the following:

a.  Hampton's Telephone Number was updated to (785) 383-9793. (*Id.*)

b.  The balance on Hampton's Loan from $4771 to $4908, the Amount Past Due was updated to $106 and the "Actual Payment" was updated from $110 to $0.  (*Id.*)

c.  The Account Status was updated from Code 11 (Good Standing) to 71 (Account 30 days past due date). (*Id.*)

d.  The "Date of Account Information" was updated from March 01, 2018 to April 16, 2018, the "Date of Last Payment" was updated from March 01, 2018 to March 24, 2018. (*Id.*)

- 18 -

e.   The "FCRA DOFD" was updated to March 24, 2018 and the "Compliance Condition Code" was updated to "XC" to reflect that the FCRA investigation was completed and that the consumer disagrees.  (*Id*.)

f.   The Account History was also updated to reflect that there was a one month delinquency as of March 2018.  (*Id*.)

### *The May 8, 2018, Trans Union ACDV*

41.   On May 8, 2018, Barclays received an ACDV from Trans Union.  (Roark Decl. ¶ 39.)

42.   The May 8, 2018, Trans Union ACDV listed "Dispute Code 1: 112: Consumer states inaccurate information Provide or confirm complete ID and verify all Account Information." (*Id*. ¶ 40.)

43.   Included with the May 8, 2018, Trans Union ACDV were 79 pages of images of the following (*Id*. ¶ 41):

a.   A letter dated April 25, 2018 addressed to James E. Staley / CEO of Barclays Bank Delaware that was largely similar to the Staley Letter attached to the April 4, 2018, Trans Union ACDV but with several differences (the "Second Staley Letter").  (*Id*.)  Namely, this letter noted that:

> I have received 2 letters from your Delaware Post office Boxes, 8833 & 8893 in response to my initial contact with your company regarding this particular matter. Your organization continues to ignore my requests for confirmation. Not that a loan was taken out in my name, but whether that 'loan' was even funded legally AND the failure of BARCLAYS not

disclosing the fact that no money from their accounts fund any of your 'loans'. **Fraud vitiates the most solemn Contracts, documents and even judgments' U.S. vs. Throckmorton, 98 US 61, at pg. 65**. Therefore your institution's fraud nullifies any 'loan agreement' I may have signed. The fraud I am writing of is the pretend loan agreement. This 'money', along with the exorbitant interest, came from someones imagination and not from any genuine funds of BARCLAYS. Clearly ILLEGAL! Clearly FRAUD!

Further, you did not answer any of the points in my letter of March 21, 2018. I'm not even sure you received it or was made aware. Nor did you sign the affidavit. For these reasons, I am including them once again. Prove under oath the 'loan' was funded legally from BARCLAYS accounts and that you all disclosed that information to me prior to the signing of the loan.

This Notice is to confirm that your debt claim is disputed under 15 USC § 1692 *et seq*.

. . .

If you cannot verify this debt by the above listed means, then what right do you have, under the Fair Debt Collection Practices Act 15 USC§ 1692, to even send me a letter, or have a letter sent to me? Are you committing mail fraud? . . . .

(*Id*.)

b. A letter dated April 25, 2018 addressed to Tushar Morzario / CFO of Barclays Bank Delaware that was largely similar to the Morzaria Letter attached to the April 4, 2018, Trans Union ACDV but with the same additional paragraphs quoted above. ("Second Morzaria Letter") (*Id*.)

c. In addition to the letters addressed to and involving Barclays, the May 8, 2018, Trans Union ACDV also included letters similar to those

directed to the other co-defendants and attached to the April 4, 2018, Trans Union ACDV. (*Id*.)

44.     In the course of investigating the May 8, 2018, Trans Union ACDV, Barclays personnel reviewed its business records relating to the Loan, Hampton's dispute and the related 79 pages of documents.  Barclays verified Hampton's date of birth, phone number, and address in separate databases, confirmed that his account was accurately reporting as past due. (*Id*. ¶ 42):

45.     Barclays responded to the dispute on May 21, 2018 with "Response Code 22: Updated disputed account information Additional account information was also updated." (*Id*. ¶ 43.)  In particular, Barclays updated the following:

a.  The balance on Hampton's Loan from $4921 to $4954, the Amount Past Due was updated from $319 to $212 and the "Actual Payment" was updated to $0.  (*Id*.)

b.  The Account Status was updated to 80, reflecting the account was 90 days past the due date. (*Id*.)

c.  The "Date of Account Information" was updated from April 25, 2018 to May 10, 2018, the "Date of Last Payment" was updated from March 25, 2018 to March 24, 2018.  (*Id*.)

d.  The "FCRA DOFD" was updated from February 22, 2018 to March 24, 2018 and the "Compliance Condition Code" was updated to

- 21 -

"XC" to reflect that the FCRA investigation was completed and that the consumer disagrees.  (*Id.*)

e.  The Account History was confirmed to reflect that there was a two month delinquency as of April 2018. (*Id.*)

### *The May 13, 2018 Trans Union ACDV*

46.  On May 13, 2018 Barclays received an ACDV from Trans Union.  (Roark Decl. ¶ 44).

47.  The May 13, 2018 Trans Union ACDV listed Dispute Code 1: "039: Insurance claim delayed Verify Account Status, Payment Rating, Amount Past Due, Current Balance and Account History" and Dispute Code 2: 103:  "Claims true identity fraud, account fraudulently opened Provide or confirm complete ID." (*Id.* ¶ 45.)

48.  Included with the May 13, 2018 Trans Union ACDV were 84 pages of images, of the following (*Id.* ¶ 46):

a.  A letter dated March 21, 2018 addressed to James E. Staley / CEO of Barclays Bank Delaware that was identical to the Second Staley Letter attached to the May 8, 2018, Trans Union ACDV.  The letter contained Hampton's account number with Barclays. (*Id.*)

b.  A letter dated April 25, 2018 addressed to Tushar Morzaria of Barclays Bank Delaware that was identical to the Second Morzaria Letter

attached to the May 8, 2018, Trans Union ACDV. The letter contained Hampton's account number with Barclays. (*Id*.)

c. In addition to the letters addressed to and involving Barclays, the May 13, 2018 Trans Union ACDV also included letters largely similar to those directed to the other co-defendants and attached to the April 4, 2018, Trans Union ACDV. (*Id*.)

49. In the course of investigating the May 13, 2018 Trans Union ACDV, Barclays personnel reviewed its business records relating to the Loan, Hampton's dispute, including the letter he submitted, noting that he had sent similar letters to Barclays' executives before requesting verification of his debt and that he had made multiple disputes regarding his liability on the Loan. Barclays verified Hampton's name, phone number, and email address in separate databases. (*Id*. ¶ 47.)

50. Because the ACDV referenced that Hampton claimed identify theft, Barclays also verified that Hampton's account was valid by confirming: (1) that the IP address on his loan application pinged to Topeka, Kansas, which is where Hampton lived at the time he applied for the Loan, (2) that his income verification documents came from his actual employer; (3) that all calls relating to his account came from the number on his file; (4) that all voices on recordings of calls to Barclays regarding the account were the same. (*Id*. ¶ 48.)

51.     Barclays responded to the dispute on May 30, 2018 with "Response Code 22: Updated disputed account information Additional account information was also updated." (*Id.* ¶ 49.)  In particular, Barclays updated the following:

   a.  Hampton's First Name[2] and middle name from "Toni A" to "Anthony J" (*Id.*)

   b.  The balance on Hampton's Loan from $4921 to $4965 and the "Actual Payment" was updated to $0.  (*Id.*)

   c.  The Account Status was updated to 80, reflecting the account was 90 days past the due date.  (*Id.*)

   d.  The "Date of Account Information" was updated from April 25, 2018 to May 30, 2018, the "Date of Last Payment" was updated from March 25, 2018 to March 24, 2018.  (*Id.*)

   e.  The "FCRA DOFD" was updated to March 25, 2018 and the "Compliance Condition Code" was updated to "XC" to reflect that the FCRA investigation was completed and that the consumer disagrees.  (*Id.*)

   f.  The Account History was also updated to reflect a two month delinquency as of April 2018.  (*Id.*)

### *The May 16, 2018 Experian ACDV*

52.     On May 16, 2018 Barclays received an ACDV from Experian. (Roark Decl. ¶ 50.)

---

[2] *See supra* n. 1

53.     The May 16, 2018 Experian ACDV listed "Dispute Code 1: 112: Consumer states inaccurate information Provide or confirm complete ID and verify all Account Information." (*Id*. ¶ 51.)

54.     Included with the May 16, 2018 Experian ACDV were 82 pages of images, of the following (*Id*. ¶ 52):

     a.  A letter dated April 25, 2018 addressed to James E. Staley / CEO of Barclays Bank Delaware that was identical to the Second Staley Letter attached to the May 8, 2018, Trans Union ACDV.  The letter contained Hampton's account number with Barclays. (*Id*.)

     b.  A letter dated April 25, 2018 addressed to Tushar Morzaria of Barclays Bank Delaware that was identical to the Second Morzaria Letter attached to the May 8, 2018, Trans Union ACDV. The letter contained Hampton's account number with Barclays.  (*Id*.)

     c.  In addition to the letters addressed to and involving Barclays, the May 13, 2018 Trans Union ACDV also included letters largely similar to those directed to the other co-defendants and attached to the April 4, 2018, Trans Union ACDV.  (*Id*.)

55.     In the course of investigating the May 16, 2018 Experian ACDV, Barclays personnel reviewed its business records relating to the Loan, Hampton's dispute, including the letters he submitted, noting that the letter was addressed to Barclays' CEO and that Hampton had sent similar letters to Barclays' executives

before requesting verification of his debt.  Barclays personnel also reviewed Hampton's Loan application and Loan agreement.  Barclays personnel confirmed that Hampton had disputed his non-liability for the account before.  Barclays also verified Hampton's date of birth, phone number, email address, and address in separate databases, and confirmed that his account was past due. (*Id*. ¶ 53.)

56.     Barclays responded to the dispute on May 30, 2018 with "Response Code 22: Updated disputed account information Additional account information was also updated." (*Id*. ¶ 54.)  In particular, Barclays updated the following:

a.  Hampton's Date of Birth to July 10, ███ and Telephone Number to (785) 383-9793. (*Id*.)

b.  The balance on Hampton's Loan from $4921 to $4965.  (*Id*.)

c.  The Account Status was updated to 80, reflecting the account was 90 days past the due date.  (*Id*.)

d.  The "Date of Account Information" was updated from April 25, 2018 to May 30, 2018, the "Date of Last Payment" was updated to March 24, 2018.  (*Id*.)

e.  The "FCRA DOFD" was updated from February 22, 2018 to March 25, 2018 and the "Compliance Condition Code" was updated to "XC" to reflect that the FCRA investigation was completed and that the consumer disagrees.  (*Id*.)

f.   The Account History was also updated to reflect a two month delinquency as of April 2018. (*Id*.)

### *The May 16, 2018 Equifax ACDV*

57.   On May 16, 2018 Barclays received an ACDV from Equifax.  (Roark Decl. ¶ 55.)

58.   The May 16, 2018 Equifax ACDV, listed "Dispute Code 103: Claims true identity fraud, account fraudulently opened. Provide or confirm complete ID." (*Id*. ¶ 56.)

59.   Included with the May 16, 2018 Equifax ACDV were 8 pages of images, of the following (*Id*. ¶ 57):

a.   A letter dated April 25, 2018 addressed to Tushar Morzaria of Barclays Bank Delaware that was identical to the Second Morzaria Letter attached to the May 8, 2018, Trans Union ACDV.  The letter contained Hampton's account number with Barclays.  (*Id*.)

60.   In the course of investigating the May 16, 2018 Equifax ACDV, Barclays personnel reviewed Barclays' records for the Loan, Hampton's dispute and account information noting that he had made multiple disputes regarding his liability on the Loan  and requesting verification of the Loan.  Barclays personnel also reviewed Hampton's Loan application and account agreement.  Barclays verified Hampton's name, phone number, and email address in separate databases.   Barclays also verified that Hampton's account was valid and past due. (*Id*. at ¶ 58.)

61.     Barclays responded to the dispute on May 30, 2018 with "Response Code 23: Disputed information accurate. Updated account information unrelated to the dispute." (*Id*. ¶ 59.)  In particular, Barclays updated the following:

a.  Hampton's Telephone Number was updated to (785) 383-9793. (*Id*.)

b.  The balance on Hampton's Loan from $4908 to $4965 and the Amount Past Due from $106 to $319. (*Id*.)

c.  The Account Status was updated to 80, reflecting the account was 90 days past the due date.  (*Id*.)

d.  The "Date of Account Information" was updated from April 27, 2018 to May 30, 2018, the "Date of Last Payment" was updated from March 1, 2018 to March 24, 2018.  (*Id*.)

e.  The "FCRA DOFD" [Date of First Delinquency] field" was updated from March 1, 2018 to March 25, 2018 and the "Compliance Condition Code" was updated to "XC" to reflect that the FCRA investigation was completed and that the consumer disagrees. (*Id*.)

f.  The Account History was also updated to reflect a two month delinquency as of April 2018. (*Id*.)

### *The May 17, 2018 Equifax ACDV*

62.     On May 17, 2018 Barclays received an ACDV from Equifax. (Roark Decl. ¶ 60.)

63.     The May 17, 2018 Equifax ACDV, listed "Dispute Code 1: 112: Consumer states inaccurate information Provide or confirm complete ID and verify all Account Information." (*Id*. ¶ 61.)

64.     Included with the May 17, 2018 Equifax ACDV were 6 pages of images, of the following (*Id*. ¶ 62):

> a.  A letter addressed to and regarding Sofi Inc. that was largely similar to those directed to the other co-defendants and attached to the April 4, 2018, Trans Union ACDV. (*Id*.)

65.     In the course of investigating the May 17, 2018 Equifax ACDV Barclays personnel reviewed its business records relating to the Loan, Hampton's dispute and the letters attached to the dispute requesting verification of his debt.  Barclays confirmed Hamptons' demographic information and confirmed that Hampton made a payment on February 24, 2018 which was returned due to insufficient funds and that Hampton made a payment on March 24, 2018 that was eventually returned due to insufficient funds and was cancelled, and that no further payments had been made. (*Id*. ¶ 63).

66.     Barclays responded to the dispute on May 30, 2018 with "Response Code 22: Updated disputed account information Additional account information was also updated." (*Id*. ¶ 64.)  In particular, Barclays updated the following:

> a.  Hampton's Telephone Number was updated to (785) 383-9793. (*Id*.)

- 29 -

b. The balance on Hampton's Loan from $4908 to $4965 and the Amount Past Due from $106 to $319. (*Id*.)

c. The Account Status was updated to 80, reflecting the account was 90 days past the due date. (*Id*.)

d. The "Date of Account Information" was updated from April 15, 2018 to May 30, 2018, the "Date of Last Payment" was updated from March 1, 2018 to March 24, 2018. (*Id*.)

e. The "FCRA DOFD" was updated from March 1, 2018 to March 25, 2018 and the "Compliance Condition Code" was updated to "XC" to reflect that the FCRA investigation was completed and that the consumer disagrees. (*Id*.)

f. The Account History was also updated to reflect a two month delinquency as of April 2018. (*Id*.)

### F.   Hampton Files Suit Against Barclays

67.    Hampton filed this case against Barclays, and several co-defendants on July 13, 2018.[3] (ECF No. 1.)

68.    Hampton has since filed two amended complaints, and the operative Complaint is Hampton's Second Amended Complaint, (the "Second Am. Compl.") filed on September 27, 2019. (ECF  No. 141.)

---

[3] In total, Hampton filed suit against Discover Bank, Loan Depot, LLC, Market Place Loan Grantor Trust, Series 2016 LD1, Equifax Inc., Equifax Information Services, LLC, Experian Information Solutions, Inc.; Trans Union, LLC, and Does 1-10. (*See* ECF No. 141.)

69.     In his Second Am. Compl., Hampton brings one FCRA count against Barclays for an alleged violation of Section 1681s-2(b), where he alleges Barclays did not "report" accurate information about his Loan to CRAs, and that Barclays did not conduct an investigation after receiving notice of a dispute of information from CRAs. (Second Am. Compl. ¶¶ 49-59.)

70.     Hampton is seeking statutory damages in the amount of $1,000 from Barclays (*see* Second Am. Compl. ¶ 58), $5,000 for punitive damages (*see id.* at p. 24), and $0.00 for actual damages.  (Hampton Supp. ROG Resp. Nos. 16, 23; Hampton Tr. 61:4-62:17 (clarifying that he is seeking $1,000 for statutory damages, $5,000 in punitive damages, and no actual damages from Barclays).

71.     Hampton has not suffered any emotional distress as a result of his claim against Barclays. (Hampton Tr. 63:6-64:24).

## G.     The Current Status of the Loan and Information about Barclays.

72.     The outstanding balance on the Loan is not less than $5,629.33. (Roark Decl. ¶ 20.)

73.     Barclays has not sold or assigned any rights with respect to the Loan, the Loan has not been securitized, Barclays has not assigned or sold Hampton's debt, nor has Barclays assigned or sold the right to the receivables of Hampton's Loan. (*Id.* ¶ 21.)

74.     Barclays is not a "Consumer Reporting Agency" as that term is defined under 15 U.S.C. § 1681a(f) of the FCRA and Barclays is not a "Debt Collector" as

defined under 15 U.S.C § 1692a(6) of the Fair Debt Collection Practices Act. (*Id.* ¶¶ 65-66.)

75.     Barclays furnishes information about its accounts according to the industry-standard Metro II Guidelines promulgated by the Consumer Data Industry Association.  (*Id.* ¶ 67.)

76.     Under Metro II Guidelines, a furnisher like Barclays may report a current account as in good standing.  This Account Status code "11" is appropriate when an account is in good standing and currently paying as required.  Code "71" is appropriate when an account is 30 days past due.  Code "80" is appropriate when an account is 90 days past due.  (*Id.* ¶ 68.)

77.     Under Metro II Guidelines, a furnisher like Barclays may report a specific amount of time that an account has been delinquent with an Account History code.  An account history code "1" is appropriate when an account is one month past due, "2" is appropriate when an account is two months past due. (*Id.* ¶ 69.)

78.     In situations where the consumer disagrees with the investigation results, **t**he Metro II Guidelines also provide that furnishers like Barclays may report a "compliance condition code" of "XC" to reflect that an FCRA investigation was completed and that the consumer disagrees.  (*Id.* ¶ 70.)

**LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact such that summary judgment is appropriate as a matter of law. *Stewart v. Equifax Info. Servs., LLC*, 320 F. Supp. 3d 1186, 1197 (D. Kan. 2018) (citing *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010)). "If a movant establishes its entitlement to judgment as a matter of law given uncontroverted, operative facts contained in the documentary evidence, summary judgment will lie." *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)

"If the moving party satisfies its initial burden, the non-moving party 'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Stewart,* 320 F. Supp. at 1197 (quoting *Kannady*, 590 F.3d at 1169). To defeat summary judgment, the non-moving party must dispute a fact that is material to the outcome of the litigation, and this dispute must be supported by evidence that would allow a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). A party's self-serving, uncorroborated, and conclusory allegations are not enough to raise a genuine dispute of material fact. *Nahno-Lopez*

*v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("The non-movant 'may not rely merely on ... its own pleadings.' Rather, it must come forward with facts supported by competent evidence.")).

## ARGUMENT

To maintain his claim against Barclays under Section 1681s-2(b),[4] Hampton must establish that Barclays provided inaccurate information to a CRA, and that—after receiving notice that Hampton disputed the accuracy of that information from a CRA—Barclays failed to conduct a reasonable investigation of his dispute. *Stewart v. Equifax Info. Servs., LLC*, 320 F. Supp. 3d 1186, 1200-1201 (D. Kan. 2018) (citing *Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016)). A "reasonable" investigation is one that "a reasonably prudent person would undertake under the circumstances," and is an inquiry that is appropriately decided on summary judgment. *Maiteki*, 828 F.3d at 1275 (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d. Cir. 2014)).

Therefore, Barclays is entitled to summary judgment in its favor if there are no material facts in dispute concerning: (1) whether the disputed credit information it furnished to the CRAs was accurate; or (2) whether the Barclays conducted an

---

[4] Although Hampton's Second Am. Compl. is unclear, he must allege that Barclays violated § 1681s-2(b) of the FCRA because there is no private right of action under § 1681s-2(a). *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750-51 (10th Cir. 2009). Indeed this Court recognized as much in dismissing his claims against several co- defendants. (ECF 137). To the extent that Hampton purports to state a claim against Barclays under § 1681s-2(a), Barclays is entitled to summary judgment on that claim for the reasons explained in this Court's ruling. *See Tilley v. Global Payments, Inc.*, 603 F. Supp. 2d 1314, 1322 (D. Kan. 2009) (noting the lack of a private right of action for violations of § 1681s-2(a))

objectively reasonable investigation of the dispute.  *Stewart*, 320 F. Supp. 3d at 1200.

Here, Barclays is entitled to summary judgment on Hampton's claims for three

independently sufficient grounds that are established by the undisputed facts.  First,

Barclays furnished accurate information relating to Hampton's Loan in response to

disputes received from CRAs.  Second, Barclays conducted separate objectively

reasonable investigations in responding to each dispute received from CRAs relating

to Hampton's Loan.  Third, Barclays is entitled to summary judgment on Hampton's

punitive damages claim because Barclays did not willfully violate the FCRA.

Barclays is also entitled to summary judgment on its counterclaims against

Hampton for Breach of Contract and Unjust Enrichment.  The undisputed material

facts demonstrate that Hampton entered into a valid and binding contract for the

Loan with Barclays and that Hampton breached that contract by failing to make

timely payments.  As a result, Barclays is entitled to damages, which include the

current balance of the loan, which is $5,629.33, plus its attorneys' fees and costs for

collection.  In the alternative, Barclays is at minimum entitled to summary judgment

on its Unjust Enrichment claim, given that Barclays is entitled to repayment of the

$5,000 Loan proceeds it advanced to Hampton plus interest.  It would be inequitable

to allow Hampton to keep the proceeds that Barclays advanced to him, and which he

used for his own personal benefit.

## I.      Barclays is Entitled to Summary Judgment on Hampton's FCRA Claim.

Hampton cannot demonstrate the necessary elements of his FCRA claim against

Barclays—namely, that the credit information Barclays furnished about his Loan to

CRAs was inaccurate. Even if he could, Barclays is still entitled to summary judgment in its favor because it conducted objectively reasonable investigations into disputes received from CRAs regarding Hampton's Loan. For the same reasons, Hampton's claim for punitive damages also fails.

### A.   Barclays Responded to Disputes Received from CRAs with Accurate Account Information.

Barclays is first entitled to summary judgment on Hampton's FCRA claim because in response to all of the disputes Barclays received from CRAs, Barclays furnished accurate information to CRAs about his Loan.

Section 1681s-2(b) of the FCRA requires a furnisher like Barclays to modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate. 15 U.S.C. § 1681s-2(b). In fact, "[t]o prevail on a section 1681s–2(b) claim, a plaintiff must demonstrate 'actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover.'" *Stewart v. Equifax Info. Servs., LLC*, 320 F. Supp. 3d 1186, 1198 (D. Kan. 2018) (citing *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 30 (1st Cir. 2010)). Therefore, Hampton cannot succeed on his Section 1681s-2(b) claim against Barclays if Barclays furnished accurate information to the CRAs regarding Hampton's Loan. *Id.*

In his Second Am. Compl., Hampton claims that Barclays inaccurately reported that he had an account balance when it should have been reported as $0.00. (ECF 141 ¶ 54.) He further claims that CRAs are required to remove any derogatory information from his credit report because Barclays did not verify his debt in response to direct requests he submitted to Barclays. (*Id.* at ¶¶ 24, 52, 55.) Hampton is wrong.

The undisputed facts show that: (1) Hampton applied for and received a personal loan from Barclays (SUF[5] ¶¶ 3-6), (2) that he agreed to the terms and conditions of the Loan (SUF ¶¶ 8-10), (3) that he received the Loan proceeds in the bank account into which he had asked Barclays to deposit the funds (SUF ¶¶ 12-13), and (4) that made only three payments before he stopped making payments on the Loan and fell into default. (SUF ¶¶ 15-23, ) Almost immediately after defaulting, Hampton flooded the CRAs and Barclays with eight disputes which included over 650 pages of "supporting" documents disputing his debt. (SUF ¶¶ 24-25).   The basis of each one was that Barclays' reporting of information about the Loan was inaccurate unless Barclays "verified" the Loan pursuant to the Fair Debt Collection Practice Act, 15 U.S.C. § 1692, *et seq*. (the "FDCPA").   (SUF ¶¶ 26-28, 31-34, 36-38, 41-43, 46-48, 52-54, 57-59, 62-64).   None of the information in Hampton's 650 plus pages of disputes contradicted the simple fact that he was responsible for the Loan, and that he failed to make timely payments pursuant to the Loan terms.  Instead, it is apparent that Hampton submitted these frivolous disputes in an effort to avoid his indisputable obligations to Barclays.

Barclays' numerous investigations confirmed the accuracy of the information it provided to the CRAs regarding Hampton's Loan. (SUF ¶¶ 29-30, 34-35, 39-40, 44-45, 49-51, 55-56, 60-61, 65-66, 75-78.)  Because Hampton cannot demonstrate that Barclays furnished inaccurate information, which is a required element of his claim, Barclays is entitled to summary judgment for this reason alone.  *See Nagim v.*

---

[5] Barclays will use the abbreviation "SUF" throughout this memorandum to refer to its preceding Statement of Uncontroverted Facts.

*Equifax Info. Servs., LLC*, 446 F. App'x 105, 107 (10th Cir. Nov. 3, 2011) (affirming summary judgment where plaintiff did not produce evidence to refute defendant's evidence that "plaintiff's credit reports were accurate at all times").

### 1. Hampton's Claims that He is Not Legally Responsible for The Loan are Unfounded.

Hampton appears to assert that Barclays' furnishing of information relating to the Loan was inaccurate under two different theories.  First, he alleges that the information Barclays furnished about the Loan cannot be "accurate" unless Barclays "verifies" his Loan pursuant to the FDCPA. (ECF 141 ¶ 24, 52.)  Second, he alleges that Barclays reported inaccurate "derogatory" information about him because, Barclays is not the "holder in due course" of his Loan.  (ECF 141 ¶ 51.)  Hampton is wrong on both accounts.

### i. Barclays is Not Subject to the FDCPA and Was Not Required to Validate Hampton's Loan.

Hampton urges that Barclays is obligated under the FDCPA to validate and verify his Loan and because Barclays did not, then it is inaccurate for Barclays to furnish *any* information about his Loan to CRAs.  (ECF 141 ¶¶ 24, 55.)  In the voluminous pages attached to his disputes to CRAs, Hampton expressly cited to the FDCPA and declared that the letters were "to confirm that [Barclays] claim is disputed under 15 USC § 1692 *et seq.*" (SUF ¶¶ 28(b), 33(b), 38(b); *see also id.* ¶¶ 43(a)-(b), 48(a)-(b), 52(a)-(b), 54(a)-(b), 59(a), 64 ("If you cannot verify this debt by the above listed means, then what right do you have under the Fair Debt Collection Practices Act 15 USC § 1692, to even send me a letter?").

Hampton is wrong and has no support for this baseless position. Hampton has not asserted any claim under the FDCPA against Barclays, nor could he.  Barclays is the original creditor for the Loan, not a debt collector subject to the FDCPA.  SUF ¶¶ 7, 73-74.)  It is well settled that original creditors are not subject to the FDCPA.  *See, e.g., Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017) (acknowledging that "third party debt collection agents generally qualify as 'debt collectors' under the relevant statutory language, while those who seek only to collect for themselves loans they originated generally do not." ); *Ladouceur v. Wells Fargo*, 682 F. App'x 649, 652 (10th Cir. 2017) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)) (noting that the legislative history of 15 U.S.C. § 1692a(6) conclusively shows that a "debt collector" "does not include the consumer's creditors").  And there is no authority connecting the response of an original creditor to a frivolous request for debt verification to the creditor's FCRA obligations under 15 U.S.C. § 1681s-2(b).[6] Moreover, Barclays has never sold Hampton's Loan nor the right to receivables on Hampton's Loan, and Barclays is entitled to the receivables on the remaining balance of Hampton's debt. (SUF ¶¶ 72-73.) Under these circumstances, then, Barclays is not a "debt collector" required to

---

[6] Hampton also appears to incorrectly assume that Barclays is a CRA, as defined by the FCRA, that is required to  "remove" information from a consumer's file if it "cannot be verified," (ECF 141 at ¶ 55) (citing 15 U.S.C. § 1681g(c)(2).)  However, the section of the FCRA Hampton relies on only applies to "Consumer Reporting Agencies," which Barclays is not. (SUF 74; *see also* 15 U.S.C. 1681a(f) (defining a consumer reporting agency as an entity that "regular engages in the process of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.")

provide debt verification under the FDCPA.   Therefore, Hampton's claim that Barclays furnished inaccurate information in violation of the FCRA because it did not "verify" Hampton's liability on the Loan pursuant to obligations placed on "debt collectors" under the FDCPA fails as a matter of law.

### ii.   Barclays Originated and is the Current Creditor of Hampton's Loan.

Hampton's contention that Barclays furnished inaccurate information about his Loan to CRAs because Barclays is not the "holder[ ] in due course" of Hampton's Loan is nonsensical.  (ECF ¶ 141 at ¶ 51).

Contrary to Hampton's unsupported contention, Barclays is the originator and creditor of Hampton's Loan. (SUF ¶ 7.)  To the extent Hampton is referring to a "holder in due course" as defined by the Uniform Commercial Code, that is not applicable here because Barclays did not purchase the Loan, nor has Barclays assigned or sold the Loan.  *Id.*; *Fifth Third Bank v. Canyon Crest Ins. Servs., Inc.*, No. 09-2440-CM, 2013 WL 12250855, at *3 (D. Kan. Jan. 4, 2013) (citing U.C.C. § 3-302; Kan. Stat. Ann. § 84-3-302.) (A "holder in due course" means a holder who gave value, in good faith, and without notice that the instrument is overdue, contains any irregularities, has been dishonored, or is subject to defenses.)[7]

As has been demonstrated, Barclays at all times furnished accurate information to CRAs regarding Hampton's account status.   The Court should

---

[7] Nor does evidence support Hampton's allegation that Barclays furnished inaccurate information to the CRAs because it purportedly "securitize[ed]" the receivables to his Loan. (ECF 141 ¶ 51).   Hampton's Loan was not securitized, Barclays has not assigned or sold Hampton's debt, nor has Barclays assigned or sold the right to the receivables of Hampton's Loan.  (SUF ¶ 73.)

therefore grant summary judgment against Hampton and in Barclays' favor for this reason alone.

### B. Barclays Conducted a Reasonable Investigation into Each of the Disputes Received from CRAs Relating to Hampton's Account.

Barclays is also entitled to summary judgment in its favor on Hampton's FCRA claim because it conducted objectively reasonable investigations into every notice of dispute received from CRAs regarding Hampton's Loan.

The duty for a furnisher to investigate a dispute under the FCRA is triggered only after a CRA notifies the furnisher of the dispute. (ECF No. 137 at 7 (Memorandum and Order) (citing *Willis v. Capital One Corp.*, 611 F. App'x 500, 502 (10th Cir. 2015) and *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1178 (10th Cir. 2013)).) Notice of a dispute received by a furnisher from a consumer "does not trigger a furnisher's duties under the FCRA." *Id.*

When a furnisher like Barclays receives notice of a dispute from a CRA, it must "investigate 'reasonably' how the information it is providing [to the CRAs] should appear." *Stewart*, 320 F. Supp. 3d at 1195. In doing so, a furnisher may not be held liable under Section 1681s-2(b) of the FCRA, if it conducts a "reasonable" investigation into a consumer's dispute. *Gissler v. Pa. Higher Educ. Assistance Agency*, No. 16-CV-01673-PAB-MJW, 2017 WL 4297344, at *5 (D. Colo. Sept. 28, 2017) (granting summary judgment where there were no disputed material facts as to the reasonableness of the defendant's investigations). Even if a furnisher reaches the wrong result, performance of a reasonable investigation is a complete defense.

*Maiteki v. Marten Transp. Ltd*, No. 12-CV-2021-WJM-CBS, 2015 WL 5996760, at *9 (D. Colo. Oct. 15, 2015), *aff'd*, 828 F.3d 1272 (10th Cir. 2016) ("An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, **even if that conclusion turns out to be inaccurate**." (emphasis added)); *Gissler*, 2017 WL 4297344, at *3 (same).

"'[T]he reasonableness of the investigation is to be determined by an 'objective standard,'" and " '[t]he burden of showing the investigation was unreasonable is on the plaintiff.'" *Marten Transp. Ltd.*, 828 F.3d at 1276 (quoting *Chiang*, 595 F.3d at 37). Moreover, "a more limited investigation may be appropriate when CRAs provide the furnisher with vague or cursory information about a consumer's dispute.'" *Id.* at 1276 (internal quotation and citation omitted). "[A]n investigation does not have to be exhaustive to be reasonable." *Id.* The FCRA "does not require perfection, only a reasonable response." *Stewart*, 320 F. Supp. 3d at 1205 (quoting *Alston v. United Collections Bureau, Inc.*, No. DKC 13-0913, 2014 WL 859013, at *8 (D. Md. Mar. 4, 2014)).

Here, Barclays has presented undisputed evidence that it received and timely responded to eight (8) separate notices of dispute from CRAs relating to Hampton's Loan. (SUF ¶¶ 24-66.) Barclays' investigations into these materials in response to each and every one of Hampton's disputes fulfilled every obligation imposed by § 1681s-2(b).

For each and every dispute related to Hampton's Loan, Barclays personnel reviewed Barclays' records relating to the Loan (SUF ¶¶ 29, 34, 39, 44, 49-50, 55, 60,

65), which would include Hampton's Loan application and agreement which Hampton signed and agreed to, (SUF ¶¶ 6, 8-10).  Additionally, for each ACDV, Barclays personnel reviewed the ACDVs received, the Dispute Codes listed, and the over 650 total pages of attached "supporting" images.  (SUF ¶25, 26-29, 31-34, 36-39, 41-44, 46-50, 52-55, 57-60, 62-65.)  On each occasion, Barclays also verified Hampton's account information to ensure that the information contained in the dispute matched the information in Barclays' records regarding the Loan. (*Id*.)  After completing each investigation, Barclays personnel responded with accurate information in a timely fashion to each particular CRA and updated the "Compliance Condition Code" to "XC" to reflect that Barclays had completed its FCRA investigation and that Hampton disagreed.  (SUF ¶ 30, 35, 40, 45, 51, 56, 61, 66.)

In connection with the May 13, 2018, Trans Union ACDV, when Hampton disputed on the basis of "true identity fraud," Barclays took additional steps to verify that Hampton's Loan was valid by confirming: (1) that the IP address on his loan application pinged to Topeka, Kansas, which is where Hampton lived at the time he applied for his loan; (2) that his income verification documents came from his actual employer; (3) that all calls relating to his account came from the number on his file; (4) that all voices on calls to Barclays regarding the account were the same.  (SUF ¶¶ 47, 50.)  Barclays did the same in connection with the May 16, 2018, Equifax ACDV, when Hampton disputed on the basis of "true identity fraud." (SUF ¶¶ 58, 60).

Combined, these efforts are reasonable under the circumstances. *See e.g. Stewart*, 320 F. Supp. 3d at 1205 (finding furnisher's investigation reasonable on summary

judgment where furnisher reviewed the dispute code, its account records, and the information submitted with the plaintiff's dispute and affirmed its information).

The results of Barclays' investigations were dictated by the documents and evidence available to it, which all established that Hampton owed Barclays the balance of the Loan, and that the Loan was in default because Hampton failed to make timely payments.  Each investigation confirmed that Barclays' records were consistent with the information it was furnishing to the CRAs, and Hampton's disputes never gave Barclays any reason to doubt the accuracy of its records. Therefore, Barclays' investigation was objectively reasonable and Barclays is entitled to summary judgment as a matter of law because it conducted a reasonable investigation of each dispute.

### C.    Hampton is Not Entitled to Punitive Damages.

In his Second Am. Compl., Hampton seeks from Barclays punitive damages in the amount of $5,000.  (SUF ¶ 70).  Hampton is not entitled to such damages here.

Punitive damages are only available under the FCRA pursuant to 15 U.S.C. 1681n and where an entity "willfully" fails to comply with the provisions of the FCRA. *See* 15 U.S.C. 1681n.  Hampton has not pled that Barclays willfully violated the FCRA.  Indeed he does not even cite Section 1681n in his Second Am. Compl.

Even if he had claimed that Barclays willfully violated the FCRA, summary judgment is proper on that claim in favor of Barclays because there is no evidence of intentional or reckless conduct here, and the undisputed evidence demonstrates that Barclays did not willfully violate the FCRA. *See Birmingham v. Experian Info.*

*Solutions, Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011).  Rather, as demonstrated, Barclays timely and accurately responded to each dispute it received from CRAs relating to Hampton's Loan.

To establish that a violation of the FCRA was "willful," a plaintiff must prove that the defendant's compliance efforts created a "risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 69 (2007).  A business practice that is consistent with an interpretation of the FCRA that is "not objectively unreasonable" does not give rise to liability for willful violation under §1681n.  *Safeco*, 551 U.S. at 69*; Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1185 (10th Cir. 2013) (quoting *Birmingham*, 633 F.3d at 1012) (affirming grant of summary judgment where plaintiff fails to identify any "described practice that would be a reckless violation of the FCRA").

For all the reasons demonstrated above, Barclays did not willfully violate the FCRA at all because it furnished accurate information and performed reasonable investigations of all of Hampton's disputes to CRAs relating to his Barclays Loan.[8] Accordingly, this Court should rule as a matter of law that Barclays did not willfully violate 15 U.S.C. § 1681s-2(b), and that therefore Hampton is not entitled to punitive damages under Section 1681n.  *Id.* at 1183  (citing *Birmingham.*, 633 F.3d at 1010).

---

[8] Where there is no violation, Hampton cannot maintain a claim for a willful violation.  *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 459 (11th Cir. 2019) (dismissing willful claims where no underlying violation established).

## II.     Barclays is Entitled to Summary Judgment on its Counterclaims Against Hampton.

In light of Hampton's default on his Loan obligations, Barclays responded to his original complaint by filing a Counterclaim asserting Breach of Contract and Unjust Enrichment (the "Counterclaim").  (*See* ECF 60 at pg. 17.)[9]  Barclays seeks to recover the outstanding balance on the Loan, which totals no less than $5,629.33 as well as Barclays' attorneys' fees and costs incurred in this cause of action pursuant to the terms of the Loan contract. The undisputed material facts demonstrate that Barclays is entitled to summary judgment on its Counterclaim against Hampton because Hampton breached his obligations under the Loan to his benefit, and to Barclays' detriment.

### A.     Barclays is Entitled to Summary Judgment on its Breach of Contract Claim.

Though Hampton denied most of the allegations in Barclays' Counterclaim (*see* ECF 65), he has subsequently conceded that he entered into a valid Loan contract with Barclays, that he agreed to the Loan terms and conditions, that Barclays advanced him the Loan funds, that Hampton used the Loan funds, that he made three payments that were applied to the Loan balance, and that thereafter he failed to make timely payments under the Loan agreement.  (SUF ¶¶ 3-6, 8-10, 12-22.) Given that Barclays was damaged in the amount of the existing balance on the Loan and its costs and attorneys' fees in defending this action and recovering on the Loan, Barclays is entitled to summary judgment on its breach of contract counter claim.

---

[9] Barclays has since answered Hampton's Second Amended Complaint (*see* ECF 145), and reasserted and reincorporated its counterclaim therein. (*Id.* at n. 1).

To succeed on its breach of contract claim, Barclays need only show: "1) the existence of a contract between the parties; 2) sufficient consideration to support the contract; 3) [Barclays'] performance or willingness to perform in compliance with the contract; 4) [Hampton's] breach of the contract; and 5) damages to [Barclays] caused by the breach." *Mid-Am Bldg. Supply, Inc. v. Schmidt Builders Supply, Inc.*, No. 11-4167-KGS, 2013 WL 1308980, at *3 (D. Kan. Mar. 29, 2013) (citing Pattern Instructions for Kansas, Civ. 4th 124.01–A; and *Commercial Credit Corp. v. Harris,* 510 P.2d 1322, 1325 (Kan. 1973)).

## 1.     A Valid Contract Exists between Hampton and Barclays.

Hampton and Barclays entered into an unambiguous and routine loan contract.  All that is required to establish that a valid contract exists is a "meeting of the minds" on the essential terms of the contract.  *Phillips & Easton Supply Co. v. Eleanor Int'l, Inc.,* 212 Kan. 730, 734 (1973).  Here, Hampton applied for the Loan online in October 2017. (SUF ¶¶ 3-6.)  As part of that process, Hampton requested that Barclays deposit $5,000 into his bank account ending in 8508.  (SUF ¶¶ 5, 12.)  Hampton understood the terms and conditions, acknowledged his assent to those terms, and submitted his application. (SUF ¶¶ 8-10.)  Barclays approved Hampton's application and offered him a $5,000 loan with a 9.99% interest rate payable in 60 monthly payments.  (SUF ¶¶ 6.)  Courts regularly conclude that such conduct constitutes an offer.  *See White v. Four B Corp.*, No. 11-2416-JWL, 2011 WL 4688843, at *1 (D. Kan. Oct. 5, 2011) (noting that an application submitted on a standard form constitutes an offer).  When Barclays extended the $5,000 Loan offer, Hampton

- 15 -

accepted the offer, agreed to the terms and conditions of that offer, and signed the Loan agreement.  (SUF ¶¶ 6, 8-10.)  Such conduct constitutes acceptance under Kansas law. *Lindsey Masonry Co. v. Murray & Sons Constr. Co.*, 53 Kan. App. 2d 505, 511 (2017) (in order for there to be acceptance there must be "unconditional and positive acceptance").  Therefore, a valid contract exists between Hampton and Barclays.

### 2. Consideration Exists Because Barclays Caused $5,000 to be Deposited into Hampton's Bank Account in Exchange for Hampton's Promise to Repay Barclays the Loan Funds Plus Interest.

Under Kansas law, consideration exists when something of value is bargained for and given in exchange for a promise. PIK–Civil 4th 124.12.  The term "something of value" may consist of a promise (e.g. as a promise to pay money), an act (e.g. such as the payment of money), or a forbearance (e.g. such as forbearance to sue). *Id.*  Valid consideration exists here because Barclays and Hampton exchanged money in return for a promise to pay.  (SUF ¶¶ 10, 12.)

### 3. Barclays Performed its Contractual Obligations.

Pursuant to the terms of the Loan, Barclays provided Hampton with $5,000 by causing that amount to be deposited in Hampton's Bank Account.  (SUF ¶ 12.)  Barclays further accepted payments from Hampton and applied the payments to the Loan balance. (SUF ¶¶ 15-17.)  Therefore, Barclays performed its obligation to under the Loan contract.

### 4.     Hampton is In Breach of the Loan Contract.

Under the terms of the Loan, Hampton agreed to make sixty (60) monthly payments on the loan to repay the balance at an annual percentage rate of 9.99%. (SUF ¶ 10.)   Hampton made the first three monthly payments on the Loan in November and December 2017 and in January 2018.   (SUF ¶¶ 15-18.)   Hampton attempted to make two additional monthly payments in February and March 2018, but those of those payments were returned due to non-sufficient funds in Hampton's bank account.   (SUF ¶¶ 20-21.)   After March 24, 2018, Hampton made no further attempts to make a payment, and Barclays received no other payments to apply to the Loan.   (SUF ¶ 22.)   Under the terms of the Loan agreement, Hampton's failure to make timely payments constituted an event of Default. (SUF ¶ 23.)     Because Hampton has failed to make timely payments, he is in default, and in breach of the Loan contract.

### 5.     Barclays Continues to Suffer Damages as a Result of Hampton's Breach.

As a direct result of Hampton's default, Barclays has been damaged in the amount of, not less than the existing unpaid balance on the account, $5,629.33 at the time of this filing, (SUF ¶ 72).   Moreover, Barclays has been required to expend significant attorneys' fees and costs to pursue collection of the outstanding Loan balance. The Loan agreement provides that Barclays may recover "reasonable attorneys' fees, court or other collection costs" in connection with the use of an attorney to collect on the Loan if Hampton is in default. (SUF ¶ 11.)   Barclays' damages continue to increase as Hampton continues to withhold payment on the

Loan and further drive unnecessary litigation costs and fees incurred in defending this FCRA action and collecting the outstanding Loan balance.

For all of these reasons, Barclays has met all of the elements required to establish its Breach of Contract claims and is therefore entitled to summary judgment in its favor and against Hampton.

### B. In the Alternative, Barclays is Entitled to Summary Judgment on its Unjust Enrichment Claim.

If the Court were to somehow find that Barclays is not entitled to summary judgment on its Breach of Contract claim, then Barclays is then entitled to judgment against Hampton on Barclays' Claim for Unjust Enrichment. To succeed on its unjust enrichment claim, Barclays need only show that: (1) Barclays conferred a benefit on Hampton; (2) Hampton appreciated or acknowledged the benefit; and (3) under the circumstances, it would be inequitable to allow Hampton to retain the benefit without paying for its value. *Estate of Draper v. Bank of America, N.A.*, 288 Kan. 510, 534 (2009). Such liability is present where the acceptance by Hampton of the benefits is done in such circumstances that would reasonably notify him that Barclays expected to be compensated by Hampton for its services. *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 259 Kan. 166, 178 (1996).

The undisputed facts stated at length above demonstrate that Barclays conferred a benefit on Hampton in the form of a $5,000 Loan, and that Hampton appreciated or acknowledged the benefit by receiving and using the funds (SUF ¶¶ 12-14). Moreover, it would be inequitable here under the circumstances to allow Hampton to retain the proceeds of the Loan. Because the "proper measure of

damages for Unjust Enrichment is restitution of the value of the benefit conferred upon the defendant" Barclays requests that the Court grant it restitution in the amount of the outstanding balance of the Loan in the event that it grants summary judgment on Barclays' Unjust Enrichment claim.  *Estate of Hetrick v. Cessna Aircraft Co.*, No. 99,987, 2009 WL 1692025, at *6 (Kan. Ct. App. 2009)

## CONCLUSION

For the foregoing reasons, there is no genuine issue of any material fact to Hampton's FCRA claim against Barclays, or Barclays' Counterclaim against Hampton, and the record evidence establishes that Barclays is entitled to judgment in its favor as a matter of law with respect to all such claim.  Barclays therefore requests that the Court grant its Motion for Summary Judgment, dismiss Plaintiff's claims against Barclays with prejudice and award Barclays judgment in its favor on its Counterclaim.

Dated:  October 25, 2019                    Respectfully submitted,

                                             /s/   *Kate B. McKinney*
                                            B. Scott Tschudy, Kansas, Kansas Bar 12129
                                            Kate B. McKinney, Kansas Bar 19691
                                            MARTIN, PRINGLE, OLIVER, WALLACE
                                            & BAUER, LLP
                                            9401 Indian Creek Parkway
                                            Building 40, Suite 1150
                                            Overland Park, KS 66210
                                            T: (913) 491-5500
                                            F: (913) 491-3341
                                            E: btstschudy@martinpringle.com
                                            E: kbmckinney@martinpringle.com

                                            Christopher R. Murphy (*pro hac vice*)
                                            REED SMITH LLP

10 S. Wacker Dr.
Suite 4000
Chicago, IL 60606
T: (312) 207-6548
F: (312) 207-6400
E: CRMurphy@reedsmith.com

*Counsel for Defendant Barclays Bank Delaware*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on October 25, 2019 a true and accurate copy of the foregoing was filed electronically with the Court and was also emailed to Anthony J. Hampton at anthsehsafsamseth@protonmail.com.  Notice of this filing will be sent by operation of the Court's electronic filing system to all ECF registered parties.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Kate B. McKinney*