**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| ANTHONY J. HAMPTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BARCLAYS BANK DELAWARE; | ) | |
| DISCOVER BANK; LOAN DEPOT, | ) | |
| LLC; MARKETPLACE LOAN | ) | |
| GRANTOR TRUST, SERIES 2016-LD1; | ) | Case No. 5:18-CV-4071-DDC-KGS |
| EQUIFAX, INC.; EQUIFAX | ) | |
| INFORMATION SERVICES, LLC; | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC.; TRANSUNION, | ) | |
| LLC; and Does 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT MARKETPLACE LOAN GRANTOR TRUST, SERIES 2016-LD1'S**
**MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

NATURE OF THE CASE ........................................................................................ 3

STATEMENT OF UNCONTROVERTED FACTS .................................................. 3

QUESTIONS PRESENTED ................................................................................... 4

ARGUMENT AND AUTHORITIES ..................................................................... 4

      I.     The Calling System Is Not An ATDS. ................................................... 5

             A.   The TCPA's history. ................................................................. 5

             B.   The aftermath of *ACA International*. ........................................ 7

      II.     Plaintiff's FDCPA Claim Fails. ......................................................... 14

CONCLUSION .................................................................................................... 15

## NATURE OF THE CASE

Plaintiff Anthony Hampton ("Plaintiff") brought claims against Defendant Marketplace Loan Grantor Trust, Series 2016-LD1 ("Marketplace") for allegedly violating the Telephone Consumer Protection Act and the Fair Debt Collection Practices Act. Plaintiff's claims are based on allegations that (1) Marketplace called Plaintiff using an automatic telephone dialing system in violation of the Telephone Consumer Protection Act ("TCPA") and (2) Marketplace continued to contact him after he asked for calls to cease in violation of the FDCPA. However, Plaintiff's TCPA claim is based on old FCC orders (and decisions based on those orders) that were vacated by the D.C. Circuit. Plaintiff's FDCPA claim also fails because Plaintiff has not even made the basic allegations to support a prima facie case for an FDCPA violation.

## STATEMENT OF UNCONTROVERTED FACTS

1.      Marketplace is a Delaware Statutory Trust. *See* Second Amended Verified Complaint (the "Complaint") [Docket No. 141] at ¶ 13; *see also* Marketplace Loan Grantor Trust's Answer to Plaintiff's Second Amended Verified Complaint (the "Answer") at ¶ 13.

2.      Marketplace engaged First Associates Loan Servicing, LLC ("First Associates") to service Plaintiff's debt. Declaration of R. Cantrell at ¶ 3, a true and accurate copy of which is attached hereto as Exhibit A.

3.      First Associates uses a cloud-based calling system from Five9 (the "Calling System"). *See id.* at ¶ 4.

4.      The Calling System does not use a random or sequential number generator, and it does not have the capacity to use a random or sequential number generator. *See id.* at ¶ 5.

5.      The Calling System uses lists of phone numbers generated from the records of First Associates' customers (most often from spreadsheets) which are uploaded to the Calling System. *See id.* at ¶ 6.

6.      The Calling System does not use recorded messages or artificial voices in outbound calls.  Customers who call in always talk with a live representative.  *See id.* at ¶ 7.

7.      Every message left for Plaintiff was a voice message left by a live representative. *See id.* at ¶ 8.

## QUESTIONS PRESENTED

1.  Whether the Calling System qualifies as an automatic telephone dialing system ("ATDS") under the TCPA given the D. C. Circuit's decision in *ACA International v. FCC* and subsequent district court and appellate court decisions.

2.  Whether Plaintiff has sufficiently pled his FDCPA claim.

## ARGUMENT AND AUTHORITIES

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c). A factual issue is "genuine" if the evidence allows a reasonable jury to resolve the issue either way. *Monroe v. City of Lawrence*, 124 F. Supp. 3d 1097, 1110 (D. Kan. 2015) (citing *Haynes v. Level 3 Comms., LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006)).  A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*  The moving party bears the initial burden of showing the lack of evidence on an essential element of the claim, and then the non-moving party must respond by producing specific facts showing a genuine issue for trial.  *See Monroe*, 124 F. Supp. 3d at 1110.  "These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits – conclusory allegations alone cannot survive summary judgment." *Id.*  The court must view the evidence in the light most favorable to the non-moving

party.  Of note, summary judgment is not a disfavored procedural shortcut; rather, it is an important procedure designed to secure the just, speedy and inexpensive determination of every action.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citing Fed. R. Civ P. 1)).

**I.       The Calling System Is Not An ATDS.**

To prevail on a TCPA claim, Plaintiff must establish (1) that Marketplace called his cellular phone; (2) using an ATDS; (3) without Plaintiff's prior consent.  *Lee v. loanDepot, LLC*, 2017 U.S. Dist. LEXIS 20994, *3 (D. Kan. Feb. 14, 2017).  Here, the Calling System is not an ATDS, so Plaintiff's TCPA claim fails.

**A.   The TCPA's history.**

The TCPA was originally passed in 1991, and it prohibited anyone from making a call to a cellular phone using an automatic telephone dialing system (an "ATDS") or artificial or prerecorded voice.  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA defines an ATDS as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."  *See* 47 U.S.C. § 227(a).  The TCPA also authorized the Federal Communications Commission (the "FCC") to prescribe regulations.  *See* 47 U.S.C. § 227(b)(2).

The early interpretation of the TCPA to cover "devices that randomly or sequentially generated telephone numbers and dialed those numbers or stored them for later dialing."  *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1307 (11th Cir. 2020).  In its earliest regulations, the FCC's interpretation matched this early understanding of the TCPA.  The FCC's 1992 declaratory order said that "certain technologies would not qualify as auto-dialers under the Act because the numbers these devices called 'are not generated in a random or sequential fashion'—a baseline for covered calls."  *Id.* at 1308 (quoting *In re Rules & Regulations*

5

*Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8667 (1992)). The FCC retained this view in 1995 when it said that the TCPA "did not cover calls 'directed to . . . specifically programmed contact numbers,' only to those 'randomly or sequentially generated telephone numbers.'" *Id.* (quoting *In re TCPA Rules & Regulations*, 10 FCC Rcd. 12391, 12400 (1995)).

In 2003, this universally understood interpretation changed.  The FCC issued a new order extending the TCPA to "equipment that merely dialed numbers 'from a database of numbers'— that merely stored numbers and called them." *Id.* (quoting *In re TCPA Rules & Regulations*, 18 FCC Rcd. 14014, 14091 (2003)).  The FCC did this to respond to new technologies that emerged that did not rely on random or sequential number generators but that could call using lists of telephone numbers of potential customers. *Id.* at 1308-09.  Orders in 2008 and 2015 furthered this new interpretation. *See id.* at 1309.  Indeed, in the 2015 order "the Commission had affirmed its initial view, that auto-dialers *must* generate random or sequential numbers, but also its revision that devices *may* count if they dial numbers from a stored list." *Id.* (citing *ACA Int'l v. FCC*, 885 F.3d 687, 702-703 (D.C. Cir. 2018) (emphasis in original).

In response to the 2015 order, an industry group, ACA International, sued the FCC to challenge its broad interpretation of the TCPA.  Among other things, one question the D.C. Circuit considered was "which sorts of automated dialing equipment are subject to the TCPA's restrictions on unconsented calls . . . ." *ACA Int'l v. FCC*, 885 F.3d 687, 691 (D.C. Cir. 2018).  The D.C. Circuit closely examined the 2015 order.  It discussed the order's adoption of an expansive interpretation of "capacity." *Id.* at 696.  The order had "the apparent effect of embracing any and all smartphones: the device routinely used by the vast majority of citizens to make calls and send messages . . . ." *Id.*  The 2015 order's conclusion was that "app downloads and other software

additions of that variety—and the enhanced functionality they bring about—are appropriately considered to be within a device's 'capacity.' . . . As a result, 'a piece of equipment can possess the requisite 'capacity' to satisfy the statutory definition of an 'autodialer' even if, for example, it requires the addition of software to actually perform the functions described in the definition.'" *Id.* (quoting 2015 Declaratory Ruling, 30 FCC Rcd. at 7974 ¶ 16 n.63, 7975 ¶ 18).

Due to the incredibly broad nature of this interpretation, the D.C. Circuit found that, "[t]hose sorts of anomalous outcomes are bottomed in an unreasonable, and impermissible, interpretation of the statute's reach.  The TCPA cannot reasonably be read to render every smartphone an ATDS subject to the Act's restrictions . . . ."  *Id.* at 697.  The D.C. Circuit went on to say that "[t]he Commission's capacious understanding of a device's 'capacity' lies considerably beyond the agency's zone of delegated authority . . . ."  *Id.* at 698.  Thus, the D.C. Circuit held that "[t]he Commission's order, in that event, would not constitute reasoned decisionmaking and thus would not satisfy APA arbitrary-and-capricious review."  *Id.* at 699.  The D.C. Circuit set aside the FCC's treatment of those matters because the order did not "satisfy the requirement of reasoned decisionmaking.  The order's lack of clarity about which functions qualify as a device as an autodialer compounded the unreasonableness of the FCC's expansive understanding of when a device has the 'capacity" to perform the necessary functions.  *Id.* at 703.

After the D.C. Circuit set aside the FCC orders regarding the necessary functions of an ATDS, the question then became, "What now?"

### B.  The aftermath of *ACA International*.

After the *ACA International* decision, courts deciding TCPA cases were left without the FCC's guidance.  District and circuit court decisions have generally fallen into three categories: (1) decisions adopting the statutory definition; (2) decisions adopting the FCC's 2003 and 2008

predictive dialer rulings; and (3) decisions holding that systems calling automatically from lists are ATDSs under the TCPA.

At the district court level an example of the first category is *Gadelhak v. AT&T Services*. In *Gadelhak*, the district court found that *ACA International* "nullified the FCC's previous pronouncements defining ATDS" because the 2015 order reaffirmed the FCC's previous statements, including the FCC's 2003 declaratory ruling.  2019 U.S. Dist. LEXIS 55200, *11-12 (N.D. Ill. Mar. 29, 2019).   It held that "*ACA International* invalidated the Commission's understanding of the term ATDS as articulated in the 2015 Declaratory Ruling, as well as the 2008 Declaratory Ruling and the 2003 Order.  *Id.* at *13.  It then analyzed the statutory language of Section 227(a)(1).  *Id.* at *14.

The *Gadelhak* court started with the proposition that it must begin with the statute's text "and assume that the ordinary meaning of that language accurately expresses the legislative purpose."  *Id.*  Like most courts that evaluate the TCPA, the district court resorted to rules of grammar to parse the statute.  It said:

> Both "store" and "produce" are transitive verbs, meaning both require an object.  Here, that object is "telephone numbers to be called."  And the phrase "using a random or sequential number generator" modifies neither "store" nor "produce," but instead actually modifies "telephone numbers to be called." *Id.* This is evidenced by the phrase's position immediately after "telephone numbers to be called." *Id.* Put another way, the most sensible reading of the provision is that the phrase "using a random or sequential number generator" describes a required characteristic of the *numbers* to be dialed by an ATDS—that is, *what* generates the numbers.

*Id.* at *15.  Thus, the court held that "the numbers stored by an ATDS must have been generated using a random or sequential number generator."  *Id.* at *18.

An example of the second category is *Maes v. Charter Communications*.  In that case, the district court concluded that the D.C. Circuit did not actually review the FCCC's other orders; it only reviewed the 2015 order.  345 F. Supp. 2d 1064, 1069 (W.D. Wis. Oct. 30, 2018).  The *Maes* court specifically found that the D.C. Circuit's "analysis and holding were limited to the 2015 order . . . ."  *Id.*  However, this interpretation ignores the fact that the D.C. Circuit expressly set aside "the Commission's treatment of those matters"—language that does not limit itself to just the 2015 order.  *See ACA Int'l*, 885 F.3d at 703.

An example of the third category is *Marks v. Crunch San Diego, LLC*.  In *Marks*, the Ninth Circuit held that the D.C. Circuit's decision in *ACA International* vacated the FCC's interpretation of an ATDS, leaving the statutory definition.  *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1047,1049 (9th Cir. 2018).  So, the Ninth Circuit also looked at the text of Section 227(a)(1).  The consumer in that case argued that a device cannot use a random or sequential number generator to store numbers, so the statute should mean that an ATDS "is equipment which has the capacity (A) to [i] store [telephone numbers to be called] or [ii] produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  *Id.* at 1050 (quotation omitted, alterations in original).  On the other hand, the caller argued that the phrase "using a random or sequential number generator" modifies "store" *and* "produce."  Thus, the caller's reading would be, "[E]quipment which has the capacity (A) to store [telephone numbers produced using a random or sequential number generator]; or [to] produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  *Id.* at 1051 (quotation omitted, alterations in original).

Because the Ninth Circuit believed that both interpretations could be correct, it found that Section 227(a)(1) is ambiguous and therefore turned to the statutory scheme.  *Id.*  The Ninth Circuit

believed that when Congress amended the TCPA to exempt calls to collect debts owed to the United States after the FCC issued its 2015 order without amending the definition of an ATDS, Congress gave its tacit approval to the FCC's interpretation. *Id.* at 1052. Thus, the Ninth Circuit held that an ATDS "includes devices with the capacity to dial stored numbers automatically." *Id.*

These three approaches to addressing the fallout from *ACA International* greatly differ. But, since *ACA International* was decided, a clear majority rule has emerged.

### C. The circuit courts address the definition of an ATDS.

In addition to the Ninth Circuit's *Marks* opinion addressed above, the Seventh and Eleventh Circuits recently addressed the definition of an ATDS after *ACA International*. The Eleventh Circuit's opinion considered two interpretations: whether the phrase "using a random or sequential number generator" modifies both "store" and "produce" or only "produce." *Glasser v. Hilton Grand Vacations Co.*, LLC, 948 F.3d 1301, 1306 (11th Cir. 2020). Like other courts, the Eleventh Circuit considered "conventional rules of grammar and punctuation." *Id.* It said:

> When two conjoined verbs ("to store or produce") share a direct object ("telephone numbers to be called"), a modifier following that object ("using a random or sequential number generator") customarily modifies both verbs. Consider these examples to see the point. In the sentence, "Appellate courts reverse or affirm district court decisions using the precedents at hand," no one would think that the appellate judges rely on precedents only when affirming trial judges. Or if a law gives tax preferences for "[a] corporation or partnership registered in Delaware," then "a corporation as well as a partnership must be registered in Delaware" in order to be eligible for the preference. The same principle applies here.

*Id.* at 1306-07 (citations omitted). The court continued, saying that "the sentence contains a comma separating the phrase 'to store or produce telephone numbers to be called' from the phrase 'using a random or sequential number generator.' That, too, indicates that the clause modifies both 'store' and 'produce' and does not modify just the second verb." *Id.* at 1307. Thus, the

Eleventh Circuit held that the phrase "using a random or sequential number generator" modifies both "store" and "produce." *Id.* at 1306, 1312.

In *Gadelhak v. AT&T Services*, the appeal from the case discussed above, the Seventh Circuit held that *ACA International* did not leave the prior FCC orders intact. 950 F.3d 458, 463 (7th Cir. 2020). The Seventh Circuit considered four possible interpretations of Section 227(a)(1). The first is that the phrase "using a random or sequential number generator" modifies both "store" and "produce."[1] *Id.* The second is that the phrase describes the telephone numbers themselves (covering equipment that dials randomly or sequentially generated numbers). *Id.* at 464. The third is that the phrase only limits the word produce (which was the Ninth Circuit's interpretation in *Marks*). *Id.* And the fourth is that the phrase describes the manner in which numbers are to be called, regardless of how they are stored, produced or generated. *Id.*

When it considered the first interpretation, the Seventh Circuit also resorted to grammar rules to analyze Section 227(a)(1). It said:

> This interpretation is certainly the most natural one based on sentence construction and grammar. As the Eleventh Circuit explained, "[w]hen two conjoined verbs ('to store or produce') share a direct object ('telephone numbers to be called'), a modifier following that object ('using a random or sequential number generator') customarily modifies both verbs." *Glasser*, 2020 U.S. App. LEXIS 2481, 2020 WL 415811, at *2. The placement of the comma before "using a random or sequential number generator" in the statute further suggests that the modifier is meant to apply to the entire preceding clause. That clause is driven by the two verbs, "to store or produce." The sentence's construction thus seems to encourage applying the phrase "using a random or sequential number generator" to both verbs.

*Id.* at 464 (citation omitted). The plaintiff argued that such an interpretation rendered the word "store" superfluous, and the Seventh Circuit acknowledge that this interpretation is not perfect,

---

[1] The Seventh Circuit interprets the Third Circuit's decision in *Dominguez v. Yahoo, Inc.* (894 F.3d 116) as falling into this category.

though it also said that "[g]iven the range of storage capacities among telemarketing devices at the time of enactment, it is plausible that Congress chose some redundancy in order to cover the waterfront." *Id.* at 465 (quotation omitted).

Because of this difficulty, the Seventh Circuit considered the other interpretations to see if they fit Section 22(a)(1) any better.  It concluded they did not.  The second and third interpretations required the Court to either add language to the statute (*see id.* at 465-66) or reorder the sentence to separate "store" and "produce."  *Id.* at 466.  Further, the Seventh Circuit found that the third interpretation (which was the same as the *Marks* decision) "would create liability for every text message sent from an iPhone.  That is a sweeping restriction on private consumer conduct that is inconsistent with the statute's narrower focus."  *Id.* at 467.  Thus, the Seventh Circuit rejected the second and third interpretations.

Finally, the Seventh Circuit considered the fourth interpretation.  It rejected this interpretation as well because the comma "is evidence that the qualifier is supposed to apply to all the antecedents instead of only to the immediately preceding one."  *Id.* at 468 (quotation omitted).  Thus, the Seventh Circuit held "that the phrase 'using a random or sequential number generator' describes how the telephone numbers must be 'stored' or 'produced.'"  *Id.*

These decisions create a circuit split with the Seventh and Eleventh Circuits favoring a straightforward interpretation of the statutory definition (this becomes three if the Third Circuit's *Dominguez* decision is counted) and the Ninth Circuit adopting an expansive interpretation of Section 227(a)(1).  The district courts are similarly split.  The chart below is from TCPAWorld, a blog that tracks TCPA decisions.  This chart shows that between September 20, 2018 and February 21, 2020, twenty-one district courts have adopted the statutory definition.  Only three district courts

have adopted the FCC's 2003 and 2008 rulings, and only five district courts outside the Ninth Circuit have adopted the broad definition, such as the one stated in *Marks*.

| TCPAWORLD.COM ATDS SCORECARD* | | | |
|---|---|---|---|
| SQUIRE⬥ PATTON BOGGS | District Court TCPA Rulings Adopting Statutory Definition | District Court TCPA Rulings Adopting FCC's 2003 and 2008 Predictive Dialer Rulings | District Court Rulings Holding Dialers Calling "Automatically" from Lists are ATDS |
| First Circuit | 0 | 0 | 1 |
| Second Circuit | 0 | 1 | 0 |
| Third Circuit | 5 | 1 | 1 |
| Fourth Circuit | 2 | 0 | 0 |
| Fifth Circuit | 2 | 0 | 0 |
| Sixth Circuit | 0 | 0 | 1 |
| Seventh Circuit | 5 | 1 | 1 |
| Eighth Circuit | 2 | 0 | 0 |
| Ninth Circuit | 0 | 0 | 7 |
| Tenth Circuit | 1 | 0 | 0 |
| Eleventh Circuit | 4 | 0 | 1 |
| Total | 21 | 3 | 12 (5 outside Ninth Circuit) |
| *Since September 20, 2018 and as of February 21, 2020 | | | |

*See* Here Is Is!: Your Very Own UPDATED TCPA ATDS Scorecard (https://tcpaworld.com/2020/02/21/here-it-is-your-very-own-updated-tcpa-atds-scorecard/). This shows that there is a clear majority rule regarding the interpretation of Section 227(a)(1): an ATDS must use a random or sequential number generator to store or produce numbers. If a random or sequential number generator is not used, the dialing system is not an ATDS.

**D. The Calling System does not use a random or sequential number generator, so it is not an ATDS.**

To prevail on a TCPA claim, Plaintiff must establish (1) that Marketplace called his cellular phone; (2) using an ATDS; (3) without Plaintiff's prior consent. *Lee v. loanDepot, LLC*, 2017 U.S. Dist. LEXIS 20994, *3 (D. Kan. Feb. 14, 2017). The TCPA defines an ATDS as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." *See* 47 U.S.C. § 227(a). As discussed above, this means that an ATDS must use a random or sequential number generator.

13

However, the Calling System does not use a random or sequential number generator, nor does it have the capacity to use a random or sequential number generator. *See* Statement of Uncontroverted Facts ("SOF") at ¶ 4. Instead it uses lists of phone numbers generated from the records of First Associates' customers. *Id.* at ¶ 5. Thus, it is not an ATDS. *See Eisenband v. Pine Belt Auto., Inc.*, 2020 U.S. Dist. Lexis 53369, *15 (D.N.J. Mar. 207, 2020) ("Thus, to qualify as an ATDS, a system must randomly or sequentially generate numbers, and, accordingly, any system that dials numbers from a preprogrammed list does not fall within the statutory definition."); *Hagood v. Portfolio Recovery Assocs.*, 2020 U.S. Dist. LEXIS 47507, *13 (S.D. Ill. Mar. 19, 2020) ("Here, there is no evidence that the Avaya Proactive Dialer used by PRA has the capacity to store or produce random or sequential telephone numbers and dial them. And the Avaya system is not an ATDS merely because it reorganizes preprogrammed telephone numbers into a list in a different sequence."); *Beal v. Outfield Brew House*, 2020 U.S. Dist. LEXIS 22487, *14 (W.D. Mo. Feb. 20, 2020) ("The platforms used by Brew House did not have the ability to generate, or create, numbers. Rather, the platforms used numbers that were imported in a CSV file or manually entered by an individual typing the number into the system, a set list given to the system.").

Marketplace is entitled to summary judgment dismissing Plaintiff's TCPA claim because the Calling System uses imported lists of telephone numbers to call individuals; therefore, it is not an ATDS.

## II.    Plaintiff's FDCPA Claim Fails.

"[T]o state a plausible FDCPA claim, a plaintiff must allege that "(1) [he] is a 'consumer' within the meaning of 15 U.S.C. § 1692a(3); (2) the debt at issue arises out of a transaction entered into primarily for personal, family, or household purposes [as required by § 1692a(5)]; (3) Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6); and (4) Defendant,

though its acts or omissions, violated a provision of the FDCPA." *Hampton v. Barclays Bank Del.*, 2019 U.S. Dist. LEXIS 213331 (D. Kan. Dec. 11, 2019).  However, as the Court recognized when it granted co-defendant loanDepot, LLC's motion to dismiss Plaintiff's FDCPA claim against it, Plaintiff's Second Amended Verified Complaint does not allege that Plaintiff is a consumer or that Marketplace is a debt collector.  Moreover, Plaintiff does not allege that the debt at issue arises out of a transaction entered into for personal, family, or household purposes.

Plaintiff's FDCPA claim against Marketplace completely overlaps with his FDCPA claim against loanDeptot.com.  *See* Second Amended Verified Complaint at ¶¶ 88-90.  The entire claim addresses the alleged violations of both loanDepot, LLC and Marketplace in the same paragraphs. Where Plaintiff's FDCPA claim against loanDepot, LLC was dismissed for failing to include these basic allegations, Plaintiff's FDCPA claim against Marketplace should be dismissed for the same reasons.

## CONCLUSION

For the reasons set forth above, the Court should grant summary judgment in Marketplace's favor and dismiss Plaintiff's TCPA and FDCPA claims.

Respectfully submitted,

FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
316-267-6371
mnorton@foulston.com

*/s/ Michael J. Norton*

Michael J. Norton, KS #18732
*Attorneys for Defendant Marketplace Loan*
*Grantor Trust, Series 2016-LD1*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all parties via the Court's CM/ECF system on the 7th day of April, 2020, and was served on Pro Se Plaintiff via first class mail, postage prepaid, and e-mail to the following:

Anthony J. Hampton
2615 Mountain View Drive
McKinney, TX 75071
anthsehsafsamseth@protonmail.com

/s/ Michael J. Norton
Michael J. Norton, KS #18732
*Attorney for Defendant Marketplace Loan*
*Grantor Trust, Series 2016-LD1*

16