# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ANTHONY J. HAMPTON,

       Plaintiff,

v.

BARCLAYS BANK DELAWARE, et al.,

       Defendants.

Case No. 18-4071-DDC-ADM

## MEMORANDUM AND ORDER

Pro se plaintiff[1] Anthony J. Hampton filed this action against Barclays Bank Delaware ("Barclays") and seven other named defendants. Doc. 1. Against Barclays, plaintiff asserted a single claim alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x. Doc. 141 at 13–16. Barclays responded to plaintiff's lawsuit by filing a Counterclaim asserting breach of contract or, in the alternative, an unjust enrichment claim against plaintiff, seeking to recover the unpaid balance that plaintiff owed on a consumer loan that Barclay's made to him. Doc. 60 at 19–21; Doc. 145 at 1 n.1. On August 13, 2020, the court granted summary judgment for Barclays. Doc. 208. The court granted summary judgment against plaintiff's FCRA claim. *Id.* at 63. Also, it granted summary judgment for Barclays on its Counterclaim, awarding Barclays a judgment of $5,629.33, plus interest, and reasonable attorneys' fees and costs. *Id.*

---

[1] Because plaintiff proceeds pro se, the court construes his pleadings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers). But, under this standard, the court does not assume the role as plaintiff's advocate. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). The court does not construct arguments for plaintiff or search the record. *Id.*

The parties have filed two post-judgment motions that the court now considers. First, Barclays has filed a "Petition for Attorneys' Fees." Doc. 213. Second, plaintiff has filed a motion seeking a stay of execution of the Judgment and asking the court to waive the bond requirement. Doc. 217.

For reasons explained below, the court grants Barclays's motion seeking attorneys' fees. And, the court grants—but just in part—plaintiff's motion seeking a stay of execution of the Judgment and waiver of the bond requirement. Specifically, the court grants plaintiff's request that the court stay execution of the Judgment. But, it denies plaintiff's request to waive the full supersedeas bond requirement. Instead, the court reduces the bond requirement to half of the amount of the court's August 13, 2020 Judgment—or $2,814.66. The court explains how it reaches these decisions, below.

## I.   Background

As referenced above, the court granted summary judgment for Barclays. Doc. 208. The summary judgment included a judgment against plaintiff's FCRA claim and a judgment for Barclays on its Counterclaim. *Id.* at 63. The court awarded Barclays a judgment of $5,629.33, plus interest, and reasonable attorneys' fees and costs. *Id.* The court entered a Judgment consistent with these summary judgment rulings. Doc. 209.

On August 26, 2020, plaintiff filed a Notice of Appeal. Doc. 210. His Notice of Appeal seeks to appeal the court's Memorandum and Order granting summary judgment for Barclays (Doc. 208) and the Judgment (Doc. 209). *See* Doc. 210 at 1 (reciting that plaintiff "appeals to the United States Court of Appeals for the Tenth Circuit from the final judgment from an order dismissing case entered in this action on August 13, 2020").

On August 27, 2020, Barclays filed a "Petition for Attorneys' Fees." Doc. 213. It asks the court to award Barclays its attorneys' fees in the amount of $2,455. *Id.* at 6. In response to Barclays's motion, plaintiff submitted a one-page filing titled, "Plaintiff's Opposition to Defendant Barclays Bank Delaware's Petition for Attorneys' Fees and Stay of Judgment Pending Appeal." Doc. 216. The Clerk of the Court docketed this filing twice—once as a response to Barclays's motion seeking attorneys' fees and, separately, as a motion seeking a stay of execution of Barclays's Judgment against plaintiff. *See* Doc. 216 (docketed as a response); Doc. 217 (docketed as a motion). Barclays opposes plaintiff's request to stay execution of the Judgment. Doc. 220. Both matters—the attorneys' fees motion and the motion seeking a stay of execution of the Judgment—are fully briefed for the court's consideration. This Order decides both motions on the basis explained below.

## II.     Motion for Attorneys' Fees

Barclays asks the court to award its reasonable attorneys' fees incurred in its litigation of the Counterclaim seeking to collect the unpaid balance on plaintiff's loan. In its summary judgment Order, the court explained that plaintiff's Loan Agreement with Barclays provided that Barclays may recover reasonable attorneys' fees and costs in connection with the use of an attorney to collect if plaintiff defaulted on the loan. Doc. 208 at 8, 42–43. On Barclays's summary judgment motion, the court concluded that the undisputed facts established no genuine dispute that Barclays had a valid contract with plaintiff supported by consideration (*i.e.*, the Loan Agreement), plaintiff had breached that contract, and thus caused Barclays to incur damages. *Id.* at 43. Among other things, the court found that the damages incurred by Barclays included reasonable attorneys' fees and costs expended to collect the unpaid balance owed under the Loan Agreement. *Id.* So, the court awarded Barclays its damages plus its reasonable attorneys' fees

and costs expended collecting on the unpaid balance plaintiff owes under the Loan Agreement. *Id.*

Now, Barclays asks the court to award it a total sum of $2,455 in attorneys' fees. Barclays asserts this sum represents a reasonable amount of fees incurred in its prosecution of the Counterclaim seeking to recover the unpaid loan balance. The court agrees. It explains why, below.

### A. Legal Standard

The district court has broad authority over awards of attorneys' fees. *Law v. Nat'l Collegiate Athletic Ass'n*, 4 F. App'x 749, 751 (10th Cir. 2001); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000).

When determining whether a requested fee award is reasonable, "a court must begin by calculating the so-called 'lodestar amount' of a fee" which is "the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (further citations omitted)). The party requesting attorneys' fees bears the burden to prove the amount of hours spent on the case and the appropriate hourly rates. *United Phosphorus*, 205 F.3d at 1233. Once an applicant satisfies this burden, the court presumes that the lodestar figure is a reasonable fee. *Robinson*, 160 F.3d at 1281; *see also Weaver v. JTM Performant Recovery, Inc.*, No. 2:13-cv-2408-JTM, 2014 WL 4843961, at *4 (D. Kan. Sept. 29, 2014) ("Once an applicant has met this burden, the lodestar figure is presumed to be a reasonable fee.").

After determining the lodestar, the court may adjust that figure upward or downward "'to account for the particularities of the suit and its outcome.'" *Fox v. Pittsburgh State Univ.*, 258 F.

4

Supp. 3d 1243, 1254 (D. Kan. 2017) (quoting *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012)). This approach requires the court to consider the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). Those factors are: (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.

Although the court may consider each of these factors, it need not consider those factors "'subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Fox*, 258 F. Supp. 3d at 1254 (quoting *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1281 (D. Kan. 2016)). This is so because "[t]he lodestar calculation is meant to be the primary consideration when awarding fees rather than the *Johnson* factors." *Id.* (citing *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1103 (10th Cir. 2010)).

### B. Analysis

As already explained, Barclays seeks a total of $2,455 in attorneys' fees.[2] It asserts this sum represents a reasonable amount of fees incurred in prosecuting the Counterclaim. With its

---

[2] Our court's local rule governs awards of *statutory* attorneys' fees. D. Kan. Rule 54.2. Here, Barclays seeks to recover fees under a contract—not a statute. Although D. Kan. Rule 54.2 "applies by its terms to statutory attorneys' fees," our court "routinely" directs parties to comply with the procedures set forth in that rule, including the provision for consultation between the parties, "for contractual fee disputes as well." *Ross v. Rothstein*, No. 13-CV-2101, 2013 WL 11350360, at *9 n.9 (D. Kan. Sept. 9, 2013); *see also Am. Multi-Cinema, Inc. v. Southroads, LLC*, 119 F. Supp. 2d 1190, 1215 (D. Kan. 2000)

motion, Barclays has submitted a Declaration signed by counsel. Doc. 213-1. It explains that Barclays's fee request seeks fees for the time that two attorneys spent working on the matter. *Id.* at 2–3 (Decl. ¶¶ 3, 8, 9).

*First*, the court considers whether the hourly rates charged by these lawyers are reasonable. One of the two lawyers who worked on this matter charged an hourly rate of $335 through December 2018, after which it increased to $345. *Id.* at 3–4 (Decl. ¶ 11). This is a discounted rate from this lawyer's standard hourly rate of $555. *Id.* This lawyer attests that he is in good standing with the Illinois Bar, he has practiced consumer litigation in federal and state courts and in other forums throughout the United States, and he was admitted to practice law in Illinois in 2010. *Id.* at 3 (Decl. ¶ 5). The second lawyer's hourly rate for this matter was $235 through December 2018, after which it increased to $255. *Id.* at 3–4 (Decl. ¶ 11). This is a discounted rate from this lawyer's standard hourly rate of $470. *Id.* The second lawyer is in good standing with the Illinois Bar, he has practiced consumer litigation in federal and state courts, and he was admitted to practice law in Illinois in 2017. *Id.* at 3 (Decl. ¶ 6).

Barclays asserts that these hourly rates are reasonable and within the range of hourly rates for attorneys practicing in the Kansas City area. It has attached to its motion portions of the 2020 edition of the Missouri Lawyers Media's *Corporate Counsel Desk Book*, showing the median hourly rate in the Kansas City area for all lawyers is $405, for partners the median hourly rate is $475, and for associates the median hourly rate is $345. *See* Doc. 213-3 at 5. Our court

---

(ordering the parties to comply with D. Kan. Rule 54.2 when making a request for attorneys' fees under a lease agreement). Here, the court never has ordered Barclays to comply with D. Kan. Rule 54.2's requirements. And, the court recognizes that our court has refused to apply D. Kan. Rule 54.2's consultation requirement to an equitable fee award request because the local rule applies only to statutory fee awards. *Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1145 (D. Kan. 2010). Because Barclays seeks a contractual attorneys' fee award and because the court never has ordered it to comply with D. Kan. Rule 54.2 before seeking fees, the court doesn't apply D. Kan. Rule 54.2 here.

has approved hourly rates that "are within and consistent with the rates reflected in the Corporate Counsel Desk Book for the Kansas City area[.]" *Young v. Physicians Off. Partners, Inc.*, No. 18-cv-2481-KHV-TJJ, 2020 WL 3655415, at *5 (D. Kan. June 10, 2020), *report and recommendations adopted by* No. 18-2481-KHV, 2020 WL 3639854, at *1 (D. Kan. July 6, 2020). The hourly rates of the two billing attorneys here are less than the median rates charged by lawyers in the Kansas City area, according to the *Corporate Counsel Desk Book*. Also, counsel's hourly rates are consistent with hourly rates approved by our court in cases involving counsel with similar experience. *See*, *e.g.*, *Mathiason v. Aquinas Home Health Care, Inc.*, 187 F. Supp. 3d 1269, 1281 (D. Kan. 2016) (Judge Lungstrum found reasonable "hourly rates ranging from $325.00 per hour for lead counsel, $350.00 per hour for a firm partner, $200.00 per hour for an associate attorney"); *Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2015 WL 4920292, at *10 (D. Kan. Aug. 18, 2015) (Judge Vratil found hourly rates ranging from $180 to $425 reasonable, depending on each attorney's level of experience, in an FLSA case). The court thus finds reasonable the hourly rates charged by the two attorneys who worked on this matter for Barclays.

*Next*, the court considers the amount of time the attorneys billed to this matter. Barclays seeks to recover attorneys' fees for nine hours its counsel spent prosecuting the Counterclaim. Barclays has submitted 42 pages of detailed billing records recording the time that each of the two attorneys devoted to the case. Doc. 213-2. Each specific task recorded is a proper charge for the litigation of the Counterclaim, and does not include time spent defending plaintiff's FCRA claim. The court finds the time spent on each task is reasonable.

Thus, after concluding that counsel's hourly rates and the amount of time they expended on the matter are reasonable, the court finds that the lodestar calculation—*i.e.*, $2,455—is

reasonable. *See Robinson*, 160 F.3d at 1281 (explaining that once an attorneys' fee award applicant satisfies its burden to prove the amount of hours spent on the case and the hourly rates charged are reasonable, the court presumes that the lodestar figure is a reasonable fee).

Plaintiff opposes Barclays's fee request with just one sentence in his Opposition: "Plaintiff makes his objections to Defendant's August 27, 2020 petition for attorneys' fees." Doc. 216 at 1. But, plaintiff provides no reason that Barclays is not entitled to the fees that it seeks. To the contrary, the court finds that Barclays adequately has supported its fee request with its submissions, as discussed above. The court also has considered the *Johnson* factors listed above. It finds that the majority of those factors are neutral ones. None of the *Johnson* factors present any reason for the court to adjust the lodestar upward or downward. The court thus finds that the requested fee award is a reasonable one. And the court is unimpressed with plaintiff's one sentence objection. Accordingly, the court grants Barclays's motion and awards it $2,455 in attorneys' fees.

### III.    Motion to Stay Execution of the Judgment

Next, the court considers plaintiff's request that the court stay execution of the Judgment.

#### A. Legal Standard

Federal Rule of Civil Procedure 62(a) provides that "[e]xcept as provided in Rule 62(c) and (d), execution on a judgment and proceedings to enforce it are stayed 30 days after its entry, unless the court orders otherwise." Fed. R. Civ. P. 62(a). Rule 62(b) provides: "At any time after judgment is entered, a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). "The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." *Id.* Also, the Federal Rules of Appellate Procedure provide: "In a civil case, the district court may require an

8

appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7.

The Tenth Circuit instructs that courts should require a "full supersedeas bond . . . in normal circumstances." *Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986) (citations omitted). "District courts, however, have inherent discretionary authority in setting supersedeas bonds." *Id.* (citation omitted). Also, "the district court has the discretion to reduce or waive the bond requirement if the appellant demonstrates a present financial ability to respond to the judgment that is likely to continue or if the appellant's present financial condition is such that posting a full bond would impose an undue financial burden." *Lech v. Jackson*, No. 16-cv-01956-PAB-MJW, 2018 WL 2183984, at *1 (D. Colo. May 10, 2018) (citations and internal quotation marks omitted).

To excuse the bond, "[t]he burden falls to the debtor to objectively demonstrate good cause for such a waiver." *Meyer v. Christie*, No. 07-2230-CM, 2009 WL 3294001, at *1 (D. Kan. Oct. 13, 2009) (citation omitted). The Seventh Circuit considers several factors when deciding whether to waive a full supersedeas bond requirement. *Dillon v. City of Chicago*, 866 F.2d 902, 904–05 (7th Cir. 1988). They include: (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the court has in the availability of funds to pay the judgment; (4) whether appellant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether appellant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the appellant in an insecure position. *Id.* Although the Tenth Circuit has not adopted the Seventh Circuit's standard, our court routinely applies these factors to decide whether to waive a supersedeas bond. *See Meyer*, 2009 WL 3294001, at

*1; *see also Dodson Aviation, Inc. v. HLMP Aviation Corp*, No. 08-4102-KGS, 2011 WL 6304131, at *1 (D. Kan. Dec. 16, 2011); *Midwest Tr. Co. of Mo. v. Gard*, No. 06-2411-EFM, 2009 WL 2043502, at *2 (D. Kan. July 14, 2009); *Wilmer v. Bd. of Cnty. Comm'rs of Leavenworth Cnty.*, 844 F. Supp. 1414, 1419 (D. Kan. 1993).

### B. Analysis

Here, plaintiff asks the court to "stay the judgment" and "waive any bond requirement." Doc. 217 at 1. Barclays responds that the court should deny plaintiff's request because he hasn't provided any reason for the court to waive or reduce the bond requirement necessary to stay execution of a judgment. Doc. 220 at 4–5. Barclays argues that the relevant factors favor requiring a bond in the full amount of the Judgment. *Id.* at 5.

For the first and second factors—the complexity of the collection process and the amount of time required to obtain the Judgment after it is affirmed on appeal—Barclays argues that "locating and recovering any assets of Plaintiff is likely to be a complex and time-intensive process." *Id.* at 5. But Barclays does not say why this is so. *Id.* It simply points to plaintiff's "past conduct[.]" *Id.* The court assumes Barclays is referring to plaintiff's failure to pay the amounts he owed under the Loan Agreement. But plaintiff's failure to pay amounts owed on a loan doesn't equate to a showing that locating and recovering assets to satisfy the Judgment will prove complex or time consuming. The court finds that these first two factors don't favor requiring plaintiff to pay the full supersedeas bond.

For the third and fourth factors—the degree of confidence that the court has in the availability of funds to pay the Judgment and plaintiff's ability to pay the Judgment—the court considers plaintiff's Financial Affidavit. Doc. 223. Plaintiff certifies that he has a family of five comprised of himself, his spouse, and three dependents. *Id.* Plaintiff reports that he has been

unemployed since May 2020. *Id.* His spouse earns the family's sole income reported as $4,200 net monthly income. *Id.* Plaintiff's monthly bills and living expenses amount to $3,650. *Id.* Plaintiff reports he has $200 either in cash on hand or in savings or checking accounts. *Id.* The court has awarded Judgment against plaintiff for $5,629.33 in damages, plus interest, and reasonable attorneys' fees and costs. Doc. 209 at 1. Based on plaintiff's reported financials, the court doesn't have a strong degree of confidence that plaintiff has the funds available to pay the Judgment. In similar circumstances, at least one court has waived the full bond requirement but still required the judgment debtor to "present the court with a financially secure plan that will provide adequate security for the judgment creditor, in lieu of posting a supersedeas bond." *Sierra Club v. El Paso Gold Mines, Inc.*, No. Civ.A.01 PC 2163 OES, 2003 WL 25265871, at *8 (D. Colo. Apr. 21, 2003) (citations omitted). Plaintiff presents no such plan here. And, our court has refused to waive the bond requirement where the judgment debtor didn't "contend[ ] that it now has the funds available" to pay to the judgment or that it "would be able to raise the funds in a timely manner after the appeal is decided." *Wilmer v. Bd. of Cty. Comm'rs of Leavenworth, Kan.*, 844 F. Supp. 1414, 1419 (D. Kan. 1993). Similarly, here, plaintiff hasn't established that he has the funds available to pay the Judgment. To the contrary, his Financial Affidavit shows he doesn't have the funds. Also, plaintiff hasn't shown that he could raise the funds in a timely manner after the appeal is decided. So, these third and fourth factors favor the court ordering plaintiff to pay the full bond requirement.

The fifth and final factor—whether plaintiff is in such a precarious financial situation that the requirement to post a bond would place other creditors of plaintiff in an insecure position—is a neutral one. Although plaintiff's Financial Affidavit outlines a precarious financial situation, the court has access to no information revealing whether other creditors have a claim against

11

plaintiff, or whether requiring plaintiff to post the full supersedeas bond would place these creditors in an insecure position. Barclays argues that it has secured a judgment on an unsecured debt, and it is self-evident that this judgment will not put other unsecured creditors at risk. Doc. 220 at 6. But, the court notes that plaintiff's precarious financial situation alone may suffice to waive the full supersedeas bond requirement. In *Miami International Realty Company v. Paynter*, the Tenth Circuit affirmed the trial court's decision to waive the full supersedes bond requirement because the debtor "was financially unable to post a full bond" and "execution on the judgment would place him in insolvency." 807 F.2d 871, 874 (10th Cir. 1986). Like the judgment debtor in *Paynter*, plaintiff's Financial Affidavit shows that he financially is unable to post a full bond and execution on the full amount of the judgment likely would place him in insolvency. The court finds that this factor favors waiving the full supersedeas bond requirement.

After considering all five factors, the court finds that they favor waiving the requirement that plaintiff pay the full supersedeas bond. But still, the court finds that plaintiff hasn't shouldered his burden to demonstrate "good cause why this court should deviate from the general rule of imposing a *full* supersedeas bond before execution of the judgment is stayed pending appeal." *Brinkman v. Dep't of Corr.*, 815 F. Supp. 407, 410 (D. Kan. 1993) (emphasis added). While plaintiff's financial status suggests that he can't pay the full amount of the bond, the court finds that his financial condition "merit[s] a bond in some amount" and Barclays is "entitled to that security[.]" *Midwest Tr. Co. of Mo. v. Gard*, No. 06-2411-EFM, 2009 WL 2043502, at *2 (D. Kan. July 14, 2009). Plaintiff's Financial Affidavit reports that he has $200 cash on hand or in a bank account. Doc. 223. Plaintiff's household monthly income exceeds his family's monthly expenses by $550. *Id.* And, in September, plaintiff had sufficient funds to pay

12

the $505 filing fee for his appeal. *See* Docket Entry dated Sept. 4, 2020 ("APPEAL FEE PAID in the amount of $505 Receipt No. T4631014132 re Notice of Appeal 210 filed by Anthony J. Hampton[.]"). The court thus finds that plaintiff has the ability to pay a reduced bond. So, the court grants plaintiff's request to stay execution of the Judgment pending appeal, but it requires him to post a reduced bond of $2,814.66—representing 50% of the amount of the Judgment entered against him on August 13, 2020—as security for Barclays.

Balancing the relevant factors, the court, in its discretion, grants plaintiff's motion seeking a stay of the Judgment pending appeal in part. Specifically, consistent with Fed. R. Civ. P. 62(b), the court grants the motion to stay execution of the Judgment. But, it denies the motion's request to waive the full supersedeas bond requirement altogether. Instead, the court orders plaintiff to pay a reduced bond of $2,814.66. He must provide that bond within 30 days of this Order's date.

### IV. Conclusion

For reasons explained, the court grants Barclays's "Petition for Attorneys' Fees" (Doc. 213). The court awards reasonable attorneys' fees to Barclays in the amount of $2,455.

Also, the court grants in part plaintiff's motion (Doc. 217) seeking a stay of execution of the Judgment and denies the motion in part. The court grants the motion to stay execution of the Judgment. But, the court denies plaintiff's request to waive the full supersedeas bond requirement. The court will stay enforcement of the Judgment but only upon plaintiff posting a reduced supersedeas bond of $2,814.66. The court orders plaintiff to file the reduced bond with the Clerk of the Court within 30 days of this Order's date.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Barclays Bank Delaware's "Petition for Attorneys' Fees" (Doc. 213) is granted. The court awards Barclays

Bank Delaware $2,455 in attorneys' fees.  Also, the court directs the Clerk of the Court to file an amended Judgment including the amount of this attorneys' fee award.

**IT IS FURTHER ORDERED** that plaintiff's Motion seeking a stay of execution of the Judgment (Doc. 217) is granted in part and denied in part.  **The court will stay execution of the Judgment but only upon plaintiff posting a reduced supersedeas bond of $2,814.66.  The court orders plaintiff to file the reduced bond with the Clerk of the Court within 30 days of this Order's date.**

**IT IS SO ORDERED.**

Dated this 29th day of December, 2020, at Kansas City, Kansas.

                                              **s/ Daniel D. Crabtree**
                                              **Daniel D. Crabtree**
                                              **United States District Judge**